[Civ. No. 21428.   First Dist., Div. One.   May 28, 1964.]

ELIZABETH CHARGIN SOLLEY, Plaintiff and Respondent, v. GERALD LEE SOLLEY, Defendant and Appellant.

Charles M. Weile for Defendant and Appellant.

Clifford R. Lewis for Plaintiff and Respondent.

SULLIVAN, J.—Defendant appeals from a judgment awarding plaintiff recovery of $3,656 plus costs under a property settlement agreement.

Plaintiff Elizabeth Solley and defendant Gerald Lee Solley were married in Reno, Nevada, on July 27, 1940. Thereafter they lived together as husband and wife for approximately 16 years. Two children were born issue of the marriage: a son in 1943 and a daughter in 1949.

On June 18, 1956, at Mill Valley, California, where they were then residing, the parties entered into a child custody and property settlement agreement. The entire agreement follows:

"Mill Valley, California
"June 18, 1956

"Re: Child Custody and Property Settlement Agreement between Gerald L. Solley and Elizabeth C. Solley

"TO WHOM IT MAY CONCERN

"Upon this day, June 18, 1956, We, Gerald L. Solley and Elizabeth C. Solley, have come to this agreement of both property settlement and child custody in view of our impending divorce.

"I, Gerald L. Solley, have agreed to allow Elizabeth C. Solley full custody of our children, Gerald Lee Solley, Jr., and Kathleen Dianne Solley; and that she, Elizabeth, will allow me every reasonable visitation privilege, and vacation

privilege, not to exceed two months each year, with our children. I, Gerald, also agree to provide adequate support for these children, in the amount of one-third (⅓rd) my annual income, until each has reached the age of twenty-one.

"I, Gerald L. Solley, have also agreed to allow Elizabeth C. Solley full claim and sole ownership of our home at #4 Loring Avenue in Mill Valley, California, and that she, Elizabeth, in turn agrees to assume responsibility of the balance of the mortgage on the above mentioned home, and she also agrees to pay the property taxes thereon.

"Having reached the above agreement on this day, June 18, 1956, in the County of Marin, in the State of California, we do affix our signatures.

"Signed: /s/ Gerald L. Solley  
Gerald Lee Solley  
"Signed: /s/ Elizabeth C. Solley  
Elizabeth C. Solley"

Thereafter plaintiff established residence in Reno for the purpose of securing a Nevada divorce. She testified in the court below that she did this at defendant's suggestion. During this period of time she left the two children with her mother in Sacramento.

On August 7, 1956, plaintiff was granted a divorce from defendant in the Second Judicial District Court of the State of Nevada in and for the County of Washoe. By its terms the judgment was an absolute decree forever dissolving the marriage of the parties. Defendant appeared in the action by an attorney. The judgment and decree provided among other things "[t]hat the written agreement entered into between the parties on June 18, 1956 be and the same hereby is ratified and approved as a final and equitable determination of the property rights of the parties and all matters pertaining to the custody, support and maintenance of the minor children of the parties; and the parties are hereby ordered and directed to comply with the terms thereof, the said agreement having been introduced into evidence as Plaintiff's Exhibit A." The original property settlement agreement was attached to the decree. The Nevada judgment and decree has never been modified or set aside. No appeal was taken from it.

On March 22, 1962, plaintiff filed in the court below her first amended complaint (hereafter referred to as complaint) in the instant action. She alleged therein in substance that the parties had been divorced in Nevada; that theretofore

they had entered into the above agreement of June 18, 1956; and that defendant had failed to account to plaintiff as to the amount of his annual income and to pay plaintiff any part thereof except the sum of $150 per month. Plaintiff sought an accounting and recovery of all sums due according to the agreement.

Defendant's answer set forth affirmative defenses alleging that: (1) the Nevada judgment of divorce was res judicata as to all matters pleaded in the complaint; (2) by reason of said Nevada judgment, the property settlement agreement was extinguished, satisfied and determined to be nonactionable; (3) the court below had no jurisdiction of the person of defendant or of the subject matter of the complaint; and (4) the complaint failed to state facts sufficient to constitute a cause of action.

The case was brought to trial as a "short cause." At the beginning of the trial and before plaintiff presented any evidence, defendant offered a certified copy of the Nevada judgment which was received in evidence on stipulation of the parties. Defendant thereupon made an oral motion for dismissal of the action on the ground that the merger of the agreement in the Nevada judgment was a bar to any subsequent action on the agreement. The court stated that the motion would be submitted and that defendant could present his authorities in support of it at a later time. Plaintiff then testified to the execution of the property settlement agreement, the subsequent Nevada divorce and defendant's failure to make payments according to the terms of the agreement. She also stated that her sole purpose in going to Nevada was to obtain a divorce and that she never intended to establish a permanent or indefinite residence there.

At the conclusion of plaintiff's case in chief the trial was continued and defendant, who was not present, was directed to answer certain written interrogatories of plaintiff relating to his total income. In his answers thereto, defendant furnished among other things a so-called earnings schedule year by year for the years 1956 through 1962 according to which defendant's "total taxable earnings before taxes" for such period aggregated $44,270, and his "net earnings after taxes" totaled $34,389.77.

The court found and concluded[1] so far as is here pertinent

[1]Some of the findings of fact are actually conclusions of law which nevertheless do not lose their characteristics as such by being placed among the findings of fact. (*Estate of Blake* (1910) 157 Cal. 448, 456

that the balance due and unpaid from defendant to plaintiff for child support and maintenance was $3,656[2]; that the Nevada judgment did not constitute a bar to the instant action and was not res judicata as to the matter of child support since the Nevada court lacked jurisdiction over the children[3]; that the property settlement agreement did not become extinguished, satisfied or nonactionable as to the child support provisions thereof by incorporation in the Nevada judgment; that the court below had jurisdiction of the person of defendant and of the subject matter of plaintiff's complaint; and that said complaint stated a cause of action. Judgment was rendered for plaintiff in the sum of $3,656.

Defendant's contentions on appeal can be summarized thusly: (1) The merger of the property settlement agreement in the Nevada decree constituted a bar to any subsequent independent action on the agreement; (2) the complaint failed to state a cause of action in that plaintiff did not allege that she provided or became obligated to provide support for the children; (3) the provisions for child support in the agreement mean that defendant is obligated to contribute one-third of his annual "take home pay" rather than one-third of his annual *gross* income; (4) the evidence is insufficient to support the findings and the judgment; and (5) the trial court erred in ordering defendant to answer plaintiff's interrogatories during the trial. We have concluded that the first contention has merit and that the judgment should therefore be reversed. In view of this conclusion it is unnecessary for us to consider the remaining issues raised on appeal.

Since defendant appeared and participated in the Nevada action, the judgment and decree of that court being

[108 P. 287], overruled on other grounds in *Estate of Stanford* (1957) 49 Cal.2d 120, 129 [315 P.2d 681]; *Lenchner* v. *Chase* (1950) 98 Cal. App.2d 794, 802 [220 P.2d 921]; *Jon-Mar Co.* v. *City of Anaheim* (1962) 201 Cal.App.2d 832, 840 [20 Cal.Rptr. 350].)

[2]To arrive at this figure the court found that from the date of the agreement (June 18, 1956) until September 1962 defendant's gross earnings were $44,270; that under the terms of the agreement defendant was indebted to plaintiff for one-third thereof or $14,756; and that defendant's total payments were $11,100, leaving a balance due as above stated.

[3]The court further found: "[T]hat said children were not present in the State of Nevada at any time during the pendency of the said action for divorce between the parties; and that at all of said times said children were and now are residents of the State of California; . . ."

regular on its face must be accorded full faith and credit in this state. (*Sherrer* v. *Sherrer* (1948) 334 U.S. 343, 351 [68 S.Ct. 1087, 92 L.Ed. 1429, 1436, 1 A.L.R.2d 1355]; *Heuer* v. *Heuer* (1949) 33 Cal.2d 268, 270-271 [201 P.2d 385]; *Barber* v. *Barber* (1958) 51 Cal.2d 244, 246 [331 P.2d 628]; *Estate of Schomaker* (1949) 93 Cal.App.2d 616, 622-623 [209 P.2d 669]; *Haden* v. *Haden* (1953) 120 Cal.App.2d 722, 724-725 [262 P.2d 73]; *Estate of Raynor* (1958) 165 Cal.App.2d 715, 719-720 [332 P.2d 416].) ▆ As between the parties the Nevada decree ''is res judicata not only of their status with relation to each other but also of all issues that were litigated or that could have been litigated therein. [Citations.]'' (*Rediker* v. *Rediker* (1950) 35 Cal.2d 796, 801 [221 P.2d 1, 20 A.L.R.2d 1152].) ▆ Since Nevada obtained in personam jurisdiction over defendant husband, he became legally subject to a personal judgment against him for child support. (*Sharove* v. *Middleman* (1956) 146 Cal.App.2d 199, 202 [303 P.2d 900]; *Perry* v. *Perry* (1953) 119 Cal.App.2d 461, 464 [259 P.2d 953].)

However, in the instant case, it is not defendant husband but plaintiff wife who attempts to collaterally attack the Nevada judgment. Defendant does not question the validity of the Nevada divorce. ▆ Since plaintiff herself procured the decree, she is now estopped to contest its validity. (*Rediker* v. *Rediker, supra,* 35 Cal.2d 796, 805; *Watson* v. *Watson* (1952) 39 Cal.2d 305, 307 [246 P.2d 19], overruled on other grounds in *Self* v. *Self* (1962) 58 Cal.2d 683, 691 [26 Cal.Rptr. 97, 376 P.2d 65]; *Estate of Edgett* (1961) 188 Cal.App.2d 700, 704 [10 Cal.Rptr. 552].) Plaintiff's argument that under the evidence neither of the parties was a bona fide resident of Nevada at the time of the commencement of the action there and that the Uniform Divorce Recognition Act (Civ. Code, § 150 et seq.) prevents enforcement of the decree in California, must fall. We have found no authority in California, nor does plaintiff cite any, holding that the above act precludes the operation of the doctrine of estoppel. Plaintiff's further statement that the trial court regarded the Nevada decree as having no force and effect is inaccurate. The court did not treat the decree as a nullity. ▆ We therefore conclude that where, as here, both parties have submitted themselves to the jurisdiction of the court of a sister state, they may not collaterally attack the divorce decree of such other state in California, unless the decree is susceptible to such collateral attack in the state which ren-

dered the decree. (*Sherrer* v. *Sherrer, supra,* 334 U.S. 343, 351 [68 S.Ct. 1087, 92 L.Ed. 1429, 1436, 1 A.L.R.2d 1355]; *Heuer* v. *Heuer, supra,* 33 Cal.2d 268, 270-271; *Barber* v. *Barber, supra,* 51 Cal.2d 244, 246.)

The court below found and concluded that the Nevada decree was not res judicata as to the matter of child support since the court rendering it had no jurisdiction over the children who were neither residents of nor present in Nevada. We must therefore inquire whether the Nevada court had jurisdiction to ratify and approve the agreement between the parties insofar as it pertained to child support and to order the parties to comply with its terms.

In *Wilson* v. *Wilson* (1949) 66 Nev. 405 [212 P.2d 1066], plaintiff husband having established residence in Nevada commenced an action for divorce in which defendant wife appeared by answer and cross-complaint for separate maintenance. After a trial the Nevada court granted plaintiff a divorce and partial custody of the minor child of the parties and, also awarding partial custody of the child to defendant, awarded her alimony and support and maintenance for the child. On appeal defendant contended that since the child was never domiciled, resident or present in Nevada, the Nevada court lacked jurisdiction to make an award of partial custody to the father and that the court erred in making the award of alimony and child support conditional upon her complying with such extrajurisdictional and therefore void custody award. In rejecting defendant's contention the Supreme Court of Nevada declared: ''This court is of the opinion that the more sound and better reasoning of the question is that although a child may not be within the state, that in itself is immaterial. The parties to the action are the parents of the child and the cause of action, the right of custody, insofar as it affects the child is between them, and at the trial all of the facts and circumstances, not only concerning the ground for the divorce, but also as to the fitness of the respective parties to care for the child, and as to the future welfare of the child, are completely before the court. ... We hold that custody of minor children is the most vital incident of the marriage relationship in reference to the problem before the court, and as such is an integral part of the subject matter of a divorce action when both parties have submitted themselves to the jurisdiction of the district court, and that such district court has full jurisdiction of the parties, with power to render a personal decree as to the custody

of such minor children as between the parties to the action." (P. 1072 [212 P.2d].)

The court further said: "With reference to the order making the continued payment of alimony and child support by the plaintiff conditioned upon the defendant's compliance with the order permitting the plaintiff's visitation and partial custody of the minor child, we are of the opinion that such a condition was reasonable and constituted no abuse of discretion by the trial court." (P. 1072 [212 P.2d].) It is clear from this language that the court not only decided that the Nevada trial court had jurisdiction to make an award of custody but also determined in finding no error in the child support award that its power to make such an award followed as a matter of course.

Under Nevada law then where in a divorce action both parties have submitted themselves to the jurisdiction of the Nevada court, such court has jurisdiction to make an award of custody of the minor children of the parties and order payment of child support, even though such children are not residents of or present within the State of Nevada.

We observe at this point that in California where in a divorce proceeding the court has acquired in personam jurisdiction over both parties, it may make provision in a decree for the support and maintenance of nonresident children. (*Dolgoff* v. *Dolgoff* (1947) 81 Cal.App.2d 146, 150-151 [183 P.2d 380]; *Leverett* v. *Superior Court* (1963) 222 Cal.App.2d 126, 132 [34 Cal.Rptr. 784]; see also 2 Beale, The Conflict of Laws, p. 1432; Stumberg, Conflict of Laws, p. 344.) Hence if an order for child support similar to that made by the Nevada court in the instant case had been made in a California proceeding, such order would have been within the California court's jurisdiction. Had we therefore been unsuccessful in finding any Nevada statute or case law decisive of the jurisdictional issue before us, we would have been justified in assuming that the Nevada law was not out of harmony with ours and in looking to California law for a solution of the problem. (*Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.* (1955) 45 Cal.2d 448, 454 [289 P.2d 466].) The result would have been the same.

In the case at bench, as in the *Wilson* case, both parties submitted themselves to the jurisdiction of the Nevada court. The fact that here, as opposed to *Wilson*, the awards of custody and child support were made by giving effect to the child custody and property settlement agreement of the

parties makes no material difference, since Nevada courts, as do those in California, have the power to approve an agreement of the parties if it is fair and equitable to all concerned. (*Lewis* v. *Lewis* (1931) 53 Nev. 398 [2 P.2d 131, 136]; *Grenz* v. *Grenz* (1962) 78 Nev. 394 [374 P.2d 891, 894].) We therefore conclude that the Nevada court had jurisdiction in the case before us to provide for the custody and support of the minor children of the parties even though such children were never domiciled, resident or present in Nevada.

Since the Nevada court thus acted within its jurisdiction we must determine the effect of its ratification and approval of the property settlement agreement of the parties.

Nevada Revised Statute 123.080(4) provides: "If a contract executed by a husband and wife, or a copy thereof, be introduced in evidence as an exhibit in any divorce action, and the court shall by decree or judgment ratify or adopt or approve the contract by reference thereto, the decree of judgment shall have the same force and effect and legal consequences as though the contract were copied into the decree, or attached thereto." In *Ballin* v. *Ballin* (1962) 78 Nev. 224 [371 P.2d 32] the Nevada court in construing this statute, at page 35 [371 P.2d] held: "We believe that this amendment accomplished two things. First, it declared the legislative intent to eliminate the distinction theretofore existing between a ratification or approval of an agreement by court, and its adoption of it. Second, it provided for the *merger* of an agreement which had been either ratified, or adopted, or approved by the court, into the decree entered, for we consider the language 'as though the contract were copied into the decree, or attached thereto,' to mean a merger." (Italics added.) Thus it is clear that in the instant case the provisions of the decree ratifying and approving the property settlement agreement effectuated under the *Ballin* case a merger of the agreement into the decree.

We therefore reach the question whether under Nevada law, the agreement having been merged in the decree, an action may be brought on the agreement. The briefs of the parties do not discuss this question and our independent research reveals no Nevada case where this precise question has been presented to the court. However in California where a property settlement agreement is merged in the decree of divorce, since it has lost its independent existence, there is no longer any right of action on the agreement but the par-

ties must pursue their remedies on the decree. (*Hough* v. *Hough* (1945) 26 Cal.2d 605, 609-610, 614 [160 P.2d 15]; *Flynn* v. *Flynn* (1954) 42 Cal.2d 55, 58 [265 P.2d 865]; *Foust* v. *Foust* (1956) 47 Cal.2d 121, 123 [302 P.2d 11]; *Shogren* v. *Superior Court* (1949) 93 Cal.App.2d 356, 358 [209 P.2d 108]; *Dunning* v. *Dunning* (1952) 114 Cal.App.2d 110, 113 [249 P.2d 609].) In the absence of a Nevada statute or case law we will, on principles already adverted to, look to California law for a solution of the problem. (*Gagnon Co., Inc.* v. *Nevada Desert Inn, supra,* 45 Cal.2d 448, 454.) It follows that plaintiff herein in any proceeding *in Nevada* would no longer have any right of action on the property settlement agreement which under Nevada law became merged in the decree.

We therefore arrive at this final conclusion: The Nevada court had jurisdiction to make an award of child support; it had the power to do so by infusing into its order the provisions of the agreement between the parties; and its ratification and approval of such agreement as set forth above resulted in a merger of the agreement into the decree, thereby extinguishing the agreement, dissolving any right of action thereon, and requiring plaintiff to invoke her remedies on the decree. The findings and conclusions to the contrary made by the court below cannot be sustained.

The trial court was required to give to the Nevada judgment on which defendant relied full faith and credit and thus the same force and effect it would have in Nevada. (U.S. Const., art. IV, § 1; 28 U.S.C.A. § 1738; see *Sherrer* v. *Sherrer, supra,* 334 U.S. 343 [68 S.Ct. 1087, 92 L.Ed. 1429, 1 A.L.R.2d 1355] and other authorities cited *supra.*) As we have explained, the net effect of the Nevada judgment was through merger to extinguish the property settlement agreement so that no right of action thereon could thereafter be asserted. The California court was constitutionally bound to give full effect to this judicial determination and, so doing, to recognize the Nevada judgment as a bar to any attempted action on the agreement. Such recognition is dispositive of this appeal. Since plaintiff did not invoke any remedy on the Nevada decree as distinguished from the agreement, we need not determine and therefore express no opinion as to whether or not the child support provisions of the agreement as merged in the decree are, in respect to the unpaid accrued amounts thereof sought to be recovered, modifiable and therefore so lacking in finality as not to fall within the protection

of the full faith and credit clause. (*Sistare* v. *Sistare* (1910) 218 U.S. 1 [30 S.Ct. 682, 54 L.Ed. 905, 28 L.R.A.N.S. 1068]; *Lynde* v. *Lynde* (1901) 181 U.S. 183 [21 S.Ct. 555, 45 L.Ed. 810]; *Barber* v. *Barber* (1858) 62 U.S. (21 How.) 582 [16 L.Ed. 226]; *Worthley* v. *Worthley* (1955) 44 Cal.2d 465, 468 and footnote pp. 468-469 [283 P.2d 19].) It is sufficient to note here the requisite finality in the decree as to the merger and extinguishment of the agreement.

The judgment is reversed.

Bray, P. J., and Molinari, J., concurred.