[Civ. No. 1105.   Fifth Dist.   June 27, 1969.]

ETHEL E. MATTOS, Plaintiff and Respondent, v.
ANTHONY CORREIA, Defendant and Appellant.

414

Roy Lower for Defendant and Appellant.

D. Oliver Germino for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Anthony Correia, appeals from a judgment requiring him to pay for the upkeep of one of three children of himself and the plaintiff, who was his wife during a former marriage, contrary to the contract between them incorporated in the final judgment of a Mexican divorce suit and wholly without proof of *need* of said child.

The evidence shows that in 1966 Ethel E. Correia (now by remarriage Ethel E. Mattos) left the family home in Dos Palos and went to Mexico where she filed an action for divorce against Anthony in Juarez. The defendant was served in California; initially he did not appear in the case and there was a default judgment entered in favor of the plaintiff. However, on April 24, 1967, Anthony, by appearance therein, submitted himself to the jurisdiction of the Mexican court and another and final decree of divorce was entered in May 1967, *nunc pro tunc*. Incorporated in the final decree was a property settlement agreement between the two parties; this contract had been prepared by Mrs. Correia's Merced lawyer, and execution of the document was recommended by him to Mrs. Correia. The document provided that Mr. Correia should have the custody of two of the children, a girl and a boy, and that Mrs. Correia would have the custody and the duty to support the third child, Debra.

Shortly afterwards, Mrs. Correia married Mr. Mattos. Both the Mattos family and the Correia family (including the divorced wife of another person who became the present Mrs. Correia and her two children) live in Los Banos, or vicincity, in Merced County.

In the complaint of the instant case, Mrs. Mattos (formerly Mrs. Correia) alleged that she is the mother of Debra Lee Correia born in Los Banos on January 3, 1955; that the minor resides with plaintiff near Los Banos; that the defendant is the father of said minor and ". . . is legally responsible for the care, support and maintenance of said minor"; that the child has been residing with plaintiff since January 15, 1966,

and that the defendant has failed to furnish fair and reasonable support; that the defendant is gainfully employed and earns in excess of $500 per month. The prayer asks that ''Defendant be ordered to furnish reasonable support for said minor, and for such other and further relief as may be permitted by law.'' In his answer the defendant admits that he is the father of Debra and that she lives with her mother, but he denies the other allegations of the complaint and alleges ''. . . that plaintiff contracted with defendant to support, care for and maintain said minor child as hereinafter specified in defendant's separate defense.'' In that portion of the pleadings, the defendant alleges that he and the plaintiff were married in Reno, Nevada, on August 22, 1947, and were husband and wife until the 24th day of September, 1966; that they had three children as a result of the marriage: Terry E. Correia (age 17), James A. Correia (age 16), and Debra Lee Correia (age 12); that on June 18, 1966, they entered into a marital settlement agreement of which a copy is attached to the pleading, providing as between the parties for a division of the community property and for the care, support and maintenance of the three minor children of the parties; that on August 10, 1966, plaintiff filed an action for divorce in the First Civil Court of the District of Bravo, State of Chihuahua, Republic of Mexico, and that the judgment incorporated the marital settlement agreement. The answer alleges that the defendant, Anthony Correia, has fully carried out all of his duties contained in the agreement. It is further averred that soon after September 24, 1966, plaintiff married Anthony Mattos ''whom defendant believes to be of great wealth and affluence and that plaintiff's share of the community property assets of said marriage and income therefrom are more than sufficient to take care of Debra in a proper fashion.''

After the Merced trial, the court made findings to the effect that plaintiff and defendant were legally married and that three children, Terry Elizabeth, James Anthony Michael, and Debra Lee, were born as a result; that Debra Lee Correia resides with the plaintiff in Los Banos; that the defendant is the natural father of Debra but that since January 15, 1966, he has not made any provision for her support and said child has been entirely supported during that time by the plaintiff; that Debra is legally entitled to support from her father, and that he has ''sufficient income and other means to pay a reasonable monthly sum for the care, education and support of this minor child.'' The trial court further found that the marital contract was not binding on the Merced court; that

the plaintiff and her present husband and Debra live on a ranch, and that plaintiff filed a joint income tax return with Mr. Mattos for the year 1967, which showed a gross income of $43,000 with an adjusted gross earning of $27,000. As conclusions of law, the court determined that plaintiff ''is entitled to the care, custody and control of DEBRA LEE CORREIA . . . with reasonable visitation rights to the defendant,'' and that plaintiff has a right to receive from the defendant the sum of $75 per month for the support of said minor, Debra Lee Correia, starting September 1, 1968, and, further, the payment of all reasonable medical, dental and hospital bills that may be necessary to be incurred for said minor. It will be noted that the court made no finding with respect to *need* on the part of the minor. The judgment followed the conclusions of law and the findings.

THE MEXICAN DIVORCE IS BINDING UPON BOTH PLAINTIFF
AND DEFENDANT

As has already been said, after the Mexican divorce each and both of the parties to the present suit married a second time, and consequently, both are estopped to deny the validity of the divorce. (16 Cal.Jur.2d, Divorce, Separation, etc., § 296, p. 712.) It is not contended by either party, in view of the authorities on the question, that this is not so.

The facts in the case are such that, even apart from the rule of estoppel, namely, that when a party to a purported divorce accepts it as legitimate and remarries, such party is estopped from alleging that the divorce was improper, the divorce accorded in Mexico was of binding effect insofar, at least, as any attack might be made upon it from the present record. The plaintiff initiated it and there is nothing to show in the present instance that the Mexican court did not have jurisdiction. In *Scott* v. *Scott,* 51 Cal.2d 249, 255-256 [331 P.2d 641], Mr. Chief Justice Traynor in his concurring opinion said: ''Section 1915 of the Code of Civil Procedure provides: 'A final judgment of any other tribunal of a foreign country having jurisdiction, *according to the laws of such country,* to pronounce the judgment, shall have the same effect as in the country where rendered, and also the same effect as final judgments rendered in this state.' (Italics added.) The first task of the court is thus to determine whether or not the foreign court had jurisdiction under the laws of its own country. The problem is not automatically settled, however, if there is a determination that there was

jurisdiction. The court must then go on to determine whether recognition of the foreign decree would violate due process limitations or established local policy, . . . ''The valid judgments of courts of other countries should therefore be respected unless they run counter to local policy.'' The position of the plaintiff in this case is very much like that of the wife in *Estate of Shank*, 154 Cal.App.2d 808, 812 [316 P.2d 710], where it is said concerning her: ''She was instrumental in procuring the Mexican divorce and she actually remarried. As long as she lived she was precluded from denying the validity of her Mexican divorce as against Mr. Shank, whom she married and permitted to support her until her death. [Citing authorities.]'' In *Rediker* v. *Rediker*, 35 Cal.2d 796, 806 [221 P.2d 1, 20 A.L.R.2d 1152], it was said: ''. . . it has been held that a wife who consented to a Mexican 'mail order divorce' and remarried in reliance upon it was estopped from questioning its validity in an action to determine whether she or her ex-husband's second wife was entitled to his estate.'' (See *Hensgen* v. *Silberman*, 87 Cal.App.2d 668, 674 [197 P.2d 356].)

*Estate of Davis*, 38 Cal.App.2d 579, 584-585 [101 P.2d 761, 102 P.2d 545], is authority for the quasi-estoppel which applies in proper cases to Mexican divorces: ''. . . one cannot blow both hot and cold. . . . [O]ne who has invoked the exercise of a jurisdiction within the general powers of the court cannot seek to reverse its orders upon the ground of lack of jurisdiction. 'The principle opposing such action is one of estoppel . . . and estoppel does not make valid the thing complained of, but merely closes the mouth of the complainant.'' The contract between the spouses which was prepared by the plaintiff's Merced lawyer, and as to which he recommended execution, was made a part of the Mexican decree and under it the wife agreed to support the daughter, Debra.

In *Levy* v. *Levy*, 245 Cal.App.2d 341, 358 [53 Cal. Rptr. 790], it is said: ''Where the mother has custody, the father's liability is generally limited to that provided in the proceedings under which the mother was given custody. (*Lewis* v. *Lewis* (1917) 174 Cal. 336, 339. . . . It is equally clear, however, that the father deprived of custody is not thereby relieved of the obligation of support to the extent that it cannot thereafter be enforced under proper circumstances (*id.*, at p. 340). Here the plaintiff retained joint legal custody with the father. Therefore, she is in no position to claim, if

she could, that a different rule should apply to a mother deprived of custody.

" 'The trial court has the power to require either father or mother or both to assist in the support of minor children (Civ. Code, § 196), and the community property, quasi-community property, and the separate property may be subjected to the support of children (Civ. Code, § 143).' "

It is quite clear, therefore, that the plaintiff in the present action is bound by the principle of quasi-estoppel not to deny the effect of the Mexican divorce and the contract made by the parties prior to the divorce and included in the Mexican decree.

■ However, that is not a final answer to the basic question involved here as the California court, in view of the present residence of Debra in this state, would have the legitimate power, under proper circumstances, to pass on her right, through the mother, to secure support from her father if there was *need* for it. The fact, if it be a fact, that Debra was not living with her mother in Mexico at the time of the filing of the divorce complaint or the trial of the action there is immaterial.

■ Both parties to the divorce suit submitted to the jurisidiction of the Mexican court and, there being no evidence concerning any different rule than in this country, we must apply the pertinent principle existing in California and conclude that the Mexican court was entitled to pass on the custody and support of the minor even if the child was not present in Juarez. (*Solley* v. *Solley,* 227 Cal.App.2d 522, 529 [38 Cal.Rptr. 802].) ■ However, Debra presently lives with her mother and her stepfather on their ranch in California, and because of that fact the local court has jurisdiction to consider a claim on the part of Debra through her mother that the father should make payment for her support. ■ Under the law, both the father and the mother of a child, if there be need, must pay for her upkeep. (*Chapin* v. *Superior Court,* 239 Cal.App.2d 851, 858 [49 Cal.Rptr. 199] ; *Levy* v. *Levy, supra,* 245 Cal.App.2d 341.)

In *Kelly* v. *Kelly,* 115 Ga.App. 700 [155 S.E.2d 732, 734], it is said: "The Supreme Court of California has recognized the right of the court of any State having jurisdiction over a child to provide for its custody and welfare, even if it has the effect of modifying the provisions of a California decree."

420

(See *Sampsell* v. *Superior Court*, 32 Cal.2d 763 [197 P.2d 739]; Witkin, Summary of Cal. Law (1967 Supp.) Parent and Child, § 53, p. 1026.)

*Ward* v. *Ward*, 150 Cal.App.2d 438, 443 [309 P.2d 965], holds: "It is, of course, the law that parents may not by a property settlement agreement between themselves relieve themselves from their obligation to provide *needed* support for their minor children so far as they are able to do so." (Italics added.)

*Karlslyst* v. *Frazier*, 213 Cal. 377, 381 [2 P.2d 362], says: "It was beyond the power of the parties to deprive the court by their private contract of its right to make such suitable provision for the support of their minor child as her welfare required. [Citations.] Evidence of an agreement is relevant in placing the burden of support, but the court is not bound thereby. Appellant offered no evidence to show that if the agreement had been given effect the child would have been adequately cared for by her mother or that he was unable to contribute $25 a month to her support."

*Garrett* v. *Garrett*, 258 Cal.App.2d 407, 417 [65 Cal.Rptr. 580], states the law as applicable to a property settlement agreement which was effective before the 1967 amendments to section 139 of the Civil Code: "If there is no reason for questioning the validity or fairness of the agreement the court cannot withhold its approval insofar as the disposition of the community property and the support of the wife are concerned. [Citations.] Insofar as the support of the minor children is concerned the trial court is not bound to accept the parties' agreement even if there was no overreaching but may reject it and make its own order. [Citations.] When the agreement is approved, however, it becomes a binding contract between the parties and its validity is rendered res judicata in any subsequent action or proceeding based upon it. [Citations.] The court cannot modify it except to provide *adequate* support for the protection of the interests of the children. [Citations.]" (Italics added.)*

---

*In 1967 section 139 of the Civil Code was amended and it now reads: "The provisions of any agreement for child support shall be deemed to be separate and severable from all other provisions of such agreement relating to property and support of the wife or husband. All orders for child support shall be law imposed . . . [and] even where there has been an agreement between the parties on the subject of child support, may be modified or revoked at any time at the discretion of the court. . . ." This provision as amended is not retroactive.

■ Generally speaking, section 139 of the Civil Code and sections 196 and 138 of the same code give the local court the right to inquire concerning the support necessary for the minor child in California. However, the right to change the requirement for support is not one to be administered without regard to propriety. As is said in the opinion in *Bierl* v. *McMahon,* 270 Cal.App.2d 97, 101-102 [75 Cal.Rptr. 473] : ''The concept of child support in California is governed by two standards, the need of the child and the ability of the parent to pay. [Citations.] Sometimes the need shown is tempered by the father's ability to pay, but we are aware of no case where a father has been required to pay support absent a showing of need. Here, the mother expressly denied need or desire for help in supporting the child after her remarriage.'' The trial court was required to ascertain whether or not there was *need* of the minor for a change, and whether or not the father had the ability to make payment.

In the present case Mrs. Mattos clearly showed by her testimony that there was no *need* on the part of the child for support from defendant; she based her request on the false premise that the natural father should, under any and all circumstances, contribute to the support of his child.

Respondent claims that the findings of the California court do support the judgment, because the court found that the marital agreement was not binding on the trial court and that failure to find upon an issue not necessary to support a judgment is harmless; however, respondent now asks this court to make a finding under section 956a of the Code of Civil Procedure and rule 23 of California Rules of Court, as follows: ''That the Mexican proceedings pleaded in the defendant's answer are not a bar to the jurisdiction of this court to determine the rights of the parties concerning custody, support and control of the said minor child, and what may be her best interest and welfare.''

Respondent is apparently not concerned at all about a finding on the *need* of Debra, which, under California law, is absolutely necessary in a case of this kind. The trial court has completely ignored this required factor, the *need* of the child, and has treated very lightly the other essential factor, namely, the ability of the father to pay. The court refused to consider the request of appellant for findings on these matters.

The minor child, as shown by the evidence, has no need for anything additional than that which she is receiving from the

mother. She lives in an adequate home, properly located and not overcrowded. Her mother presently supplies food, clothing, entertainment—everything that satisfactory living could require. She has not made out a case for the judgment that was entered.

From the proof that the child is presently dependent upon her mother, who is married to a wealthy man with an income so munificent that his wife's community share of the earnings of the ranch will insure continued prosperity, it is an easy conclusion that the minor will enjoy much more there than her father could afford. Mr. Correia testified that he has not been able to make the payments on the house in which he and his former wife lived; that he has bought another home; that he paid $195 on the second home, which cost $15,000; the W-2 forms for his 1967 income tax report showed that he received a gross income of $6,587.88; in 1966 the gross amount earned was $6,118.44; he has also received some $6,000 as a total inheritance from an Alves estate which he has used in its entirety to pay bills, and besides the income from his labor and the amount from the inheritance he had no other income. The second job from which he received $27 a week was started the last of October in 1967. The testimony also showed that at present Mr. Correia, with five people living in his home, has these outstanding obligations: $117.50 a month for house payment; $50 a month to the Bank of America for an automobile; $47 to $50 a month to Crocker-Citizens Bank for furniture payments; $56 a month to Beneficial Finance on a loan; $30 a month for a loan from Community Loan; $10 to $15 a month to Bressler's Auto Electric for car repair; $5 a month to Spiegel, a merchandising firm from which clothes are purchased for the family on a revolving charge account; $10 a month to the Society for Crippled Children for the oldest daughter of his second wife; $30 a month for utilities; $150 or $180 a month for groceries; over $10 a month for car insurance; and $60 a year for house insurance. The present Mrs. Correia testified that when she married Mr. Correia he had "a lot of bills"; that the family bills were not acquired only during the time they have been married.

The trial judge nevertheless ordered that, despite these other obligations of Mr. Correia, he still had the duty to support Debra, and he requires him to pay $75 a month for the support of the minor. The judge said that he realized that that would cut pretty heavily into what the defendant is making. The respondent's attorney quoted from 37 California

Jurisprudence 2d, Parent and Child, section 19, at page 165, that the parental duty of support was not affected by the fact that the parent could be a minor, or that the child had not been born, or that the child was self-supporting, or had money of his own, and because the duty of a parent to support the minor child was an ''absolute, inalienable right enjoyed by the child, no form of contract between the parents, or alteration of the domestic status of either of them can affect it,'' and thus an agreement by a mother purporting to relieve a father of the duty to support his child is ineffectual as against either the child or the mother. This statement of an iron rule is an oversimplification, and it is not changeless like the ''laws of the Medes and the Persians,'' as is shown by the foregoing authorities.

For the reasons stated, the judgment is improper and cannot stand. It is evident that the positions of the respective parties are correctly delineated by the record and that a new trial could not produce additional testimony that would modify the respective rights of the parties. The judgment, therefore, is reversed and it is directed that the findings and judgment be set aside and that new findings, in accordance with this opinion, be prepared and filed and that a new judgment be adopted holding that the plaintiff take nothing by her action.

Stone, J., and Gargano, J., concurred.