[Civ. No. 30332. First Dist., Div. One. Feb. 25, 1972.]

ROGER ELDEN TITUS, JR., Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
ANNE MACDONALD KELTY, Real Party in Interest.

## Counsel

Cox, Cummins & Rinehart, Cox, Cummins, Rinehart & Lamphere and Bernard F. Cummins for Petitioner.

No appearance for Respondent.

Michael E. Ballachey for Real Party in Interest.

## OPINION

**MOLINARI, P. J.**—In this case we issued an alternative writ of mandate upon the petition of Roger Elden Titus, Jr. Petitioner seeks an order requiring the respondent court to quash service of the summons and the order to show cause served upon him by mail in an action brought by real party in interest, Anne MacDonald Kelty, to establish a foreign divorce decree as a judgment in this state. The petition also seeks an order directing the superior court to refrain and desist from entering into or taking any other proceeding in said action.

Petitioner and real party were married in Massachusetts where they lived from 1961 to 1970. Three children were born to this union. On October 6, 1970, petitioner and real party were divorced in Massachusetts. The final judgment of divorce provided that petitioner was required to support the children, that he and real party were to have joint legal custody of the children, that petitioner was to have physical custody of the children on weekdays, and real party was to have such physical custody on weekends. The judgment provided, further, that the children were not to be taken from the Commonwealth of Massachusetts without permission of the court or the consent in writing of the other parent.

Real party subsequently moved to California where she remarried. On May 20, 1971, petitioner and real party entered into a written agreement wherein petitioner consented to having the children visit with real party in California during the summer of that year. The agreement was prepared by petitioner and was mailed to real party in California where she signed it. The agreement provided for the sharing between petitioner and real party of the children's roundtrip air fare from Boston to San Francisco, for their support by real party while the children were in her custody, and specifically provided that the children were to return to Massachusetts no later than the end of August 1971.

On June 26, 1971, the children came to California where they have remained ever since. On August 17, 1971, real party commenced an action in the Superior Court of the County of Contra Costa to establish the Massachusetts judgment of divorce as a California judgment and to have the judgment modified to award the custody of the children to real party, to require petitioner to pay for their support, and for attorney fees incurred in the prosecution of the action.

At the time the complaint was filed, real party procured the issuance of an order to show cause in said action directed to petitioner to appear and show cause on August 31, 1971, why the court should not issue its order

awarding the custody of the children to real party temporarily pending the hearing of the order to show cause and permanently thereafter. The order to show cause also directed petitioner to show cause why he should not pay for the children's support and why he should not pay real party's attorney's fees and her court costs in connection with the proceedings. The order to show cause also directed petitioner to show cause why he should not be enjoined from removing the children from the County of Contra Costa pending the hearing of the action and permanently thereafter. The order to show cause also contained an ex parte order providing that during the pendency of the hearing of the order to show cause the custody of the children was awarded to real party and that each party was restrained from removing the minor children from Contra Costa County.

A copy of the complaint, summons and the order to show cause was sent to petitioner by certified air mail special delivery to his place of business in New Bedford, Massachusetts, on August 19, 1971.[1] Petitioner, in his petition, acknowledges that he received these papers by such mail prior to August 23, 1971.

On August 24, 1971, petitioner filed a motion to quash service of the order to show cause on the ground that the California court did not have jurisdiction because he was a resident of and domiciled in the Commonwealth of Massachusetts. This motion came on for hearing on August 27, 1971 and was denied on August 30, 1971. Thereafter, on August 31, 1971, the court proceeded to hold the hearing on the order to show cause. Petitioner appeared specially and objected to the jurisdiction of the court. The court received testimony from real party and admitted into evidence her declarations in support of the order to show cause. The court then made an order awarding the custody of the children temporarily to real party pending the trial of the action and ordered that petitioner pay real party, as and for the support of said children, the sum of $75 per month for each child. All other issues raised by the order to show cause were deferred, and a ruling thereon reserved, pending the trial of the action.

Petitioner contends that the superior court is acting in excess of its jurisdiction in that the court has never obtained personal jurisdiction over him. Real party asserts that the court does have personal jurisdiction over petitioner and that, moreover, petitioner, in contesting the order to show cause, made a general rather than a special appearance. In considering

---

[1]Code of Civil Procedure section 415.40 provides that "A summons may be served on a person outside this state . . . by sending a copy of the summons and of the complaint to the person to be served by any form of airmail requiring a return receipt. . . ."

these contentions we first observe that although petitioner seeks to quash service of the summons he has not moved to quash the service of civil process. His motion to quash was directed to and restricted solely to the service of the order to show cause. We are, therefore, only concerned with the propriety of the trial court's order denying petitioner's motion to quash service of the order to show cause.

Adverting to the respective contentions, we perceive that there is a distinction between the power to exercise judicial jurisdiction to determine the custody of children and the exercise of judicial jurisdiction to provide for the support of children. The former deals essentially with judicial jurisdiction over status while the latter is governed primarily by the principles applicable to jurisdiction over persons. In each, judicial jurisdiction may not be exercised, however, unless a reasonable method is employed to give the defendant or the person whose interests are affected notice of the proceedings and unless he is afforded a reasonable opportunity to be heard. (Rest. 2d Conflict of Laws, § 25, p. 109; § 69, p. 212.)

Turning to the question of custody, we note that "It is a sufficient basis for jurisdiction that the state 'has a substantial interest in the welfare of the child or in the preservation of the family unit of which he is a part . . . and this jurisdiction may exist in two or more states at the same time.' [Citation.]" (Sampsell v. Superior Court, 32 Cal.2d 763, 780 [197 P.2d 739]; see Allen v. Superior Court, 194 Cal.App.2d 720, 728 [15 Cal.Rptr. 286].) Accordingly, in custody matters there are three different bases of jurisdiction. As recognized in Sampsell, and as stated in the Restatement, "A state has power to exercise judicial jurisdiction to determine the custody, or to appoint a guardian, of the person of a child . . . (a) who is domiciled in the state, or (b) who is present in the state, or (c) who is neither domiciled nor present in the state if the controversy is between two or more persons who are personally subject to the jurisdiction of the state."[2] (Rest. 2d Conflict of Laws, § 79, pp. 237-240; see Sampsell v. Superior Court, supra, at pp. 777-779.)

The rationale of Sampsell and the Restatement is that custody is a question of status and hence is subject to the control of the state when the child is domiciled or physically present. The state of a child's domicil is usually "the one most deeply concerned with his welfare," and the state where the child is physically present "has the most immediate concern with him." (Rest. 2d Conflict of Laws, § 79; comment, p. 237; Sampsell v. Superior Court, supra, 32 Cal.2d 763, 778-779.) The Restatement, speaking of the basis of the child's physical presence in the state, observes that

---

[2]The Restatement observes that this rule follows closely the reasoning of Justice Traynor in Sampsell. (Rest. 2d Conflict of Laws, reporter's note to § 79, at p. 240.)

that the courts of that state "have direct access to the child and may be most qualified to decide what will best redound to his welfare." (Rest., *supra;* see *In re Kosh,* 105 Cal.App.2d 418, 421-423 [233 P.2d 598].)

In view of the foregoing principles, jurisdiction to determine the custody of the children in the instant case does not depend on whether petitioner is personally subject to the jurisdiction of California. Personal jurisdiction would be vital only if the children were neither domiciled nor present in the State of California. In the present case the children were physically present within the boundaries of this state at the time the instant proceedings were instituted. This circumstance sufficed to give the California courts jurisdiction to entertain proceedings touching the custody of the children.

We apprehend, however, that the California court has the authority to refuse to exercise judicial jurisdiction if the basis of that jurisdiction, i.e., the physical presence of the children in this state, has been obtained by fraud or unlawful force. (Rest. 2d Conflict of Laws, § 82, p. 247.) The rationale behind this principle is that a person should not be permitted to profit from his use of fraud or unlawful force. (Rest., *supra.*) In the present case there is no contention that the physical presence of the children in this state was procured by unlawful force since it is clear that they were voluntarily sent to California by petitioner pursuant to his agreement with real party. Petitioner, moreover, does not contend that the children's physical presence here was the result of any fraudulent misrepresentation. His complaint, rather, is that real party has breached her agreement to return the children to Massachusetts.

In the instant case the court below has not finally determined the matter of custody but has merely made an order that the children may remain temporarily with real party until the matter of custody comes on for a full hearing. On the basis of the present state of the record the court, since it had jurisdiction over the children's status, had the power to make such an order. We deem it convenient to here observe that at such custody hearing the court would be entitled to consider whether the children's presence in California was obtained by fraudulent misrepresentation so as to entitle the court to refuse to exercise its jurisdiction further and to order the children returned to petitioner. On the other hand, in the absence of such fraud, the California court, notwithstanding the subject agreement entered into by the parents, has the power to consider the best interests of the children and to make an appropriate order modifying the Massachusetts decree or affirming its present provisions. In making its determination the California court is entitled to consider real party's remarriage and the geographical separation between California and Massachusetts,

circumstances which were not extant at the time the Massachusetts decree was made. These considerations, we apprehend, would be matters which could be considered by the Massachusetts court in the exercise of its concurrent jurisdiction if modification of custody proceedings had been instituted in that jurisdiction.

■ Turning to the question of support, we observe that, since the children are physically present in this state, the California courts have subject matter jurisdiction to pass on the children's right, through the mother, to secure support from the father if there is a need for it. (*Schoch* v. *Superior Court,* 11 Cal.App.3d 1200, 1207 [90 Cal.Rptr. 365]; *Mattos* v. *Correia,* 274 Cal.App.2d 413, 419 [79 Cal.Rptr. 229]; *Worthley* v. *Worthley,* 44 Cal.2d 465, 474 [283 P.2d 19].) "In order to exercise jurisdiction over the subject matter, however, the court must secure personal jurisdiction over the defendant." (*Schoch* v. *Superior Court, supra.*) ■ 'As noted in the Restatement, "A state must have personal jurisdiction over a defendant in order to impose upon him through its courts a personal liability or obligation in favor of the plaintiff." (Rest. 2d Conflict of Laws, p. 103.)

In order to obtain personal jurisdiction over petitioner by service outside this state, it is necessary that the California court have power to exercise such jurisdiction under Code of Civil Procedure section 410.10 which provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." The general provision is said "to incorporate in California law, without specific statute or decision by our own courts, any basis of jurisdiction established now or in the future by courts properly appraising constitutional limitations." (1 Witkin, Cal. Procedure (2d ed. 1970) § 7, p. 532.)

Witkin observes that the recognized bases of judicial jurisdiction are those listed in the Restatement and that these have, in essence, been incorporated in Code of Civil Procedure section 410.10. (See 1 Witkin, Cal. Procedure (2d ed. 1970) § 72, pp. 601-602.) These bases are the following: "(a) presence; (b) domicil; (c) residence; (d) nationality or citizenship; (e) consent; (f) appearance in an action; (g) doing business in the state; (h) an act done in the state; (i) causing an effect in the state by an act done elsewhere; (j) ownership, use or possession of a thing in the state; (k) other relationships to the state which make the exercise of judicial jurisdiction reasonable." (Rest. 2d Conflict of Laws, § 27, p. 120; see 1 Witkin, Cal. Procedure (2d ed. 1970) § 77, pp. 601-602.)

■ Adverting to the instant case, the bases which real party asserts are present and give California the power to exercise judicial jurisdiction

over petitioner, are petitioner's appearance in the action and his "relationship" to the State of California. .

In considering real party's contention we first observe that appearance in an action is in essence a "relationship" to the state in which such action has been filed. ■ The concept of "relationship" is synonymous with and a reflection of the principle of "minimal contacts" which was first articulated in *Internat. Shoe Co.* v. *Washington,* 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057], as follows: "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" Accordingly, it is well settled that in order for the relationship to exist which gives a state judicial jurisdiction over an individual that individual must have had "minimal contacts" with the state. (*Internat. Shoe Co.* v. *Washington, supra; Hanson* v. *Denckla,* 357 U.S. 235, 251 [2 L.Ed.2d 1283, 1296, 78 S.Ct. 1228]; *Owens* v. *Superior Court,* 52 Cal.2d 822, 830-831 [345 P.2d 921, 78 A.L.R.2d 388]; *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855, 860-861 [323 P.2d 437]; *Empire Steel Corp.* v. *Superior Court,* 56 Cal.2d 823, 828-829 [17 Cal.Rptr. 150, 366 P.2d 502].)

We perceive that the terms "relationship to the state" and "minimal contracts" are synonymous. This synonymity is recognized by both Witkin and the Restatement. (See 1 Witkin, Cal. Procedure (2d ed. 1970) § 77, p. 601; Rest. 2d Conflict of Laws, §§ 24 and 27.) Accordingly, when we speak of the requisite "minimal contacts" which give a state the power to exercise jurisdiction over an individual we speak in terms of those "contacts" with the state which the Restatement recognizes as the bases of judicial jurisdiction. In the case of natural persons "such bases currently include presence, domicil, residence, citizenship, consent, appearance, doing business in a state, doing an act in a state, causing an effect in a state by an act or omission elsewhere, ownership, use or possession of a thing in a state, as well as other relationships to a state." (1 Witkin, Cal. Procedure (2d ed. 1970) § 7, p. 532.)

Adverting to real party's contentions we consider first the question of petitioner's appearance. ■ An appearance does not give a state the power to exercise judicial jurisdiction over an individual unless that appearance is a general appearance, i.e., one in which the individual takes part in the action or proceeding by pleading or participating in the trial. (*Olcese* v. *Justice's Court,* 156 Cal. 82, 87 [103 P. 317]; *O'Keefe* v. *Miller,* 231 Cal.App.2d 920, 921 [42 Cal.Rptr. 343].) ■ Where a

person makes a general appearance such appearance operates as a consent to jurisdiction of his person. (*Harrington* v. *Superior Court,* 194 Cal. 185, 189 [228 P. 15]; see Code Civ. Proc., § 410.50, subd. (a).) However, where a person makes a "special appearance" he does not thereby consent to jurisdiction over his person. A special appearance is made when a defendant appears in court for the sole purpose of objecting to the lack of jurisdiction over his person without submitting to such jurisdiction. (*Hernandez* v. *National Dairy Products,* 126 Cal.App.2d 490, 494 [272 P.2d 799]; *Davenport* v. *Superior Court,* 183 Cal. 506, 509-511 [191 P. 911].) ▮ Here it is clear that petitioner appeared specially to attack the jurisdiction of the court and he did so by the motion to quash service of the order to show cause, a long-established method of challenging jurisdiction of the person. (See *Davenport* v. *Superior Court, supra; Proctor & Schwartz* v. *Superior Court,* 99 Cal.App.2d 376, 377 [221 P.2d 972]; and see Code Civ. Proc., § 418.10.) It is equally clear from the record that the court below recognized that petitioner's appearance was only a special one for the purpose of attacking the jurisdiction of the court. Following the court's denial of the motion to quash the court proceeded with the hearing of the order to show cause. Although petitioner's counsel was present he did not participate in the hearing. In making its custody and support order based on such hearing the court specifically recited in its order that petitioner failed to appear at such hearing.

Turning to the other "relationships" upon which real party predicates the necessary contacts with the State of California, we note that these are asserted to consist of petitioner's act in sending the children to California and the forwarding to real party in California of an agreement concerning the children's temporary custody, which agreement was signed by real party in California.

Directing our attention to petitioner's act of sending his children to California, we perceive that arguably this action could fall within the causing "effects in the state by an act done elsewhere" base of jurisdiction. The Restatement states this base thusly: "A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any causes of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable." (Rest. 2d Conflict of Laws, § 37, p. 156.) In its rationale for this principle the Restatement discusses three possible situations under which it may arise, to wit: "(1) The act was done with the intention of causing effects in the state; (2) the act, although not done with the intention of causing effects in the state, could reasonably have been expected to do so; and (3) the

act was not done with the intention of causing effects in the state and could not reasonably have been expected to do so." (Rest. 2d, *supra*, Caveat, p. 157.)

In situations where the act is done with the intention of causing effects in the state, the state in which these effects are caused will have judicial jurisdiction over the actor or the one who caused the act to be done as to causes of action arising from these effects. (Rest. 2d Conflict of Laws, § 37, *supra*.) Where the act is not done with the intention of causing effects in the state but could reasonably have been expected to do so, the state's power to exercise judicial discretion "depends upon a variety of factors, including the extent of the relationship of the state to the defendant and to the plaintiff, the nature and quality of the effects resulting from the act, and the degree of inconvenience which would result to the defendant from being forced to stand suit in the state on the particular cause of action." (Rest. 2d Conflict of Laws, *supra*, § 37, at p. 157.) In the latter situation an important indicia is the defendant's closeness to the state; ". . . the more closely the defendant is related to the state, the more convenient it will probably be for him to stand suit in the state." (Rest., *supra*, at p. 158.) Finally, in the situation where the act was not done with the intention of causing effects in the state and where the defendant had no reason to suppose that his acts outside the state would result in effects within the state, the state will not generally have jurisdiction over the defendant unless both the plaintiff and the defendant have an extensive relationship to the state. (Rest., *supra*, at p. 159.)

In the present case it is clear that petitioner did not send his children to California with the intent of causing effects in California which would give rise to a cause of action for the custody and support of the children. To the contrary, his intent in sending the children to California was clearly and undisputably for the purpose of having them visit their mother during the summer, with the understanding that they would return to Massachusetts at the end of the summer period. Moreover, even if it could be said that although petitioner did not intend to cause effects in California but could reasonably be expected to do so, we do not have the close relationship between petitioner and California which is required to give California jurisdiction. The only other relationship with California was petitioner's act of sending the visitation agreement to California for real party's signature, a circumstance we shall discuss below.

We perceive, moreover, that the subject base of jurisdiction does not arise if the exercise of jurisdiction is not fair to the nonresident defendant and is unreasonable from the standpoint of the international and interstate

systems. (Rest. 2d Conflict of Laws, *supra*, § 37, Caveat, at p. 156.)[3] We apprehend that it would be unfair and unreasonable to hold that a nonresident parent has submitted himself to the jurisdiction of another state merely by the act of sending his children to that state temporarily for the purpose of visiting with the other parent. It is a strong policy of the law to encourage the visitation of children with their parents. Such a policy should be fostered rather than thwarted. If a parent, who has custody of his children, is faced with the prospect of submitting himself to the juirsdiction of another state by the mere act of sending his children to that state for the purpose of visiting with the other parent, it is reasonable to assume that he would refrain from doing so rather than running such risk, particularly in view of the inconvenience and costs attendant to litigating in another state.

Turning to the question of the forwarding to California for execution by real party of the visitation rights agreement, we perceive that this base of jurisdiction is predicated on the "doing of an act in the state." This principle as it pertains to the instant case, is stated thusly in the Restatement: "A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action not in tort arising from the act unless the nature of the act and of the individual's relationship to the state and to other states make the exercise of such jurisdiction unreasonable." (Rest. 2d Conflict of Laws, § 36, subd. (2), p. 147.) "Whether an exercise of judicial jurisdiction on the basis of an act done, or caused to be done, in the state would be reasonable depends upon the facts of the case. The principal factors to be considered are the nature and quality of the act, the extent of the relationship of the state to the defendant and to the plaintiff and the degree of inconvenience which would result to the defendant by being forced to stand suit in the state on the particular cause of action." (Rest., *supra*, com. on subd. (2), at p. 150.)

Here, again, the extent of the defendant's relationship to the state, i.e., how closely he is related to the state, is material. In cases where the individual does business, i.e., conducts activities of sufficient intensity to amount to the doing of business in the state, the state clearly may exercise jurisdiction. Yet where the defendant's relationship to a state is primarily legalistic, as where he merely affixes his signature to a contract while in

---

[3]This principle finds expression in the 1969 Report of the California Judicial Council as follows: "Whether a particular relationship is sufficient is determined by assessing the relevance of the relationship to the cause of action involved. Such relevance is found when the exercise of jurisdiction is in accord with contemporary views of fair play and substantial justice, and serves the best interests of the international and interstate systems." (Appendix II, p. 71; see Rest. 2d Conflict of Laws, § 24, com. b.)

the state, the exercise of jurisdiction is not warranted. (See Rest. 2d Conflict of Laws, § 36, subd. 2, com., pp. 150-152.)

In the present case petitioner did nothing more than send the agreement to California for execution by real party. This was not an act of a substantial nature; nor does it constitute doing business in California. "Doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts." (Rest. 2d Conflict of Laws, § 35, subd. (a), p. 142.)

We perceive that although California has a close relationship to real party, there is absent the element of a close relationship between petitioner and California. We observe that an important consideration is the extent petitioner's relationship is related to the cause of action sued upon. (Rest. 2d Conflict of Laws, § 36, com. on subd. (2), p. 151.) Here, assuming that the subject visitation agreement was negotiated in California, such circumstance, when coupled with real party's execution of the agreement in this state, could by virtue of California's relationship to petitioner and real party give California jurisdiction over both with respect to causes of action arising from the contract. In the instant case the cause of action is not predicated on the subject agreement, but is predicated upon real party's assertion of rights as a parent to seek custody and to secure child support. In sum, petitioner's relationship with California is primarily a legalistic relationship arising out of the isolated act of sending the agreement to California for real party's signature.

In summary, we observe that real party under the terms of the Massachusetts decree could not take the children out of that state without the consent of the Massachusetts court or petitioner. Even while in Massachusetts real party was only entitled to physical custody of the children on weekends. The agreement for the children's visitation in California in the summer of 1971 was, on petitioner's part, a consent to take the children out of the state. We perceive the act of sending the children to California to constitute a performance of petitioner's part of the agreement. We do not, however, consider that it is fair play on the part of real party to obtain such consent so as to give California subject matter jurisdiction and to then predicate personal jurisdiction of petitioner upon his acts in giving such consent.

Accordingly, in view of the remote relationship of petitioner with California, we conclude, upon a consideration of fairness to petitioner in accord with contemporary views of fair play and substantial justice and in the best interests of the interstate systems, that the State of California does not

have personal jurisdiction of petitioner for the purpose of imposing upon him the obligation of child support.

It follows that petitioner is not entitled to a writ ordering that the service of the order to show cause be quashed in its entirety and for an order annulling all of the proceedings had and all of the orders made pursuant to the order to show cause. The order to show cause must be quashed insofar as it purports to give the court below personal jurisdiction over petitioner for purposes of child support. Accordingly, the order providing for child suport must be annulled. Insofar as jurisdiction to determine custody of the children is concerned, petitioner is not entitled to have the service of the order to show cause quashed. Therefore, the proceedings had and the order made for temporary custody pursuant to the order to show cause were proper and must stand. Let the writ issue accordingly.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied March 22, 1972, and petitioner's application for a hearing by the Supreme Court was denied April 19, 1972.