[Civ. No. 28134. First Dist., Div. One. Oct. 15, 1970.]

GEORGE R. SCHOCH, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
JEANNINE F. SCHOCH MARKS, Real Party in Interest.

## COUNSEL

Ring, Turner & Ring and A. J. Ginocchio for Petitioner.

No appearance for Respondent.

James G. Maguire for Real Party in Interest.

## OPINION

SIMS, J.—By petition for a writ of mandate, petitioner, a non-resident, prays that this court command respondent court to enter an order quashing the service on him in the State of Colorado of summons in an action in which his resident ex-wife seeks to establish a Nevada decree of divorce and to modify, by doubling, the amount provided in that decree for the support of the party's two minor children who have been and are in her custody.

From the petition and the answer filed thereto it appears that the ex-wife, as real party in interest, contended and contends, and the trial court, in denying petitioner's motion to quash the service of summons, impliedly found, that the petitioner's obligation to support his two children, which existed by virtue of the parties joint residence in California at the time the Nevada divorce decree was secured, supports a finding that petitioner was a resident of this state at the time the cause of action asserted in the current pending action arose, and, therefore, establishes jurisdiction under the law as it existed prior to July 1, 1970. (See former Code Civ. Proc., § 417.[1])

[1] Section 417 of the Code of Civil Procedure, as amended in 1957 (Stats. 1957, ch. 1674, § 1, p. 3052), and effective until June 30, 1970, provided: "Where jurisdiction is acquired over a person who is outside of this State by publication of summons in accordance with Sections 412 and 413, the court shall have the power to render a personal judgment against such person only if he was personally served a copy of the summons and complaint, and was a resident of this State (a) at the time of the commencement of the action, or (b) at the time that the cause of action arose, or (c) at the time of service."

Section 417 was repealed, operative July 1, 1970 (Stats. 1969, ch. 1610, § 21, p. 3373). The Legislature has expressed its intent to give the courts the broadest

██ It is concluded that the incorporation of the obligation of child support in the Nevada decree, and the subsequent performance under that decree up to the time of the alleged change of circumstances precludes reliance upon any obligation to support which antedated petitioner's removal of his residence from California. The peremptory writ must issue.

From the record it appears that the petitioner, who is in the Air Force, claims to have always been a domiciliary of Pennsylvania. It is admitted that he was residing with his wife and children in Sacramento, California, before the Nevada divorce was secured by his wife in 1963 and that he did not give up his residence in California until 1966, three years after the divorce. The wife established residence in Nevada solely for the purpose of securing the divorce, but thereafter she returnd to California and continued to reside in this state with the children. She has remarried and moved to Contra Costa County where the pending action was filed. Petitioner was residing in Colorado at the time the present California action was commenced, October 27, 1969, and when he was served, November 13, 1969. Jurisdiction under section 417 is asserted because he resided in this state at the time the cause of action for divorce arose in 1963. (See *Soule* v. *Soule* (1961) 193 Cal.App.2d 443, 445-446 [14 Cal.Rptr. 417].)

The emphasis on the cause of action for divorce is a red herring which directs attention from the true criteria upon which this case must rest. The present complaint prays for the following relief: "1. That the decree rendered in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe be established as a foreign judgment in Superior Court, County of Contra Costa, California; [¶] 2. That the child support of each of the minor children be modified by increasing the amounts payable for each children [*sic*] to ONE HUNDRED FIFTY AND No/HUNDREDTHS ($150.00) DOLLARS; . . ." On February 1, 1963 the parties had agreed that the wife should have custody of the children subject to the husband's right of reasonable visitation, and that the husband would pay $75 per month for each child—a boy then 8 years old and a girl then 5 years old. This agreement was incorporated in and approved by the Nevada decree dated March 25, 1963.

jurisdictional powers permitted by principles of constitutional law. Section 410.10 (Stats. 1969, ch. 1610, § 3, p. 3363), operative July 1, 1970, now provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." It may be argued that the power to exercise personal jurisdiction over a nonresident individual may extend to a nonresident father who has left his child domiciled in this state under a modifiable support agreement which was entered into in this state. No opinion is expressed on this point because the statute in existence at the time of service of summons in this case did not purport to reach so far. (Cf. *Owens* v. *Superior Court* (1959) 52 Cal.2d 822, 833 [345 P.2d 921, 78 A.L.R.2d 388].)

The question is not whether the court has power in rem to establish the Nevada decree in this state, but whether the California court in 1969 had been granted jurisdiction to render a personal judgment against the petitioner upon a cause of action, which, insofar as it is predicated upon a default in the father's obligation to support or a change of circumstances, could only have arisen after the petitioner had left the state. (Cf. *Sharove* v. *Middleman* (1956) 146 Cal.App.2d 199, 203 [303 P.2d 900].)

In *Owens* v. *Superior Court* (1952) 52 Cal.2d 822 [345 P.2d 921, 78 A.L.R.2d 388], the court upheld the application of subdivision (b) of section 417 to a cause of action to recover damages for injuries suffered from being bitten by the defendant's dog at a time when the defendant was a resident of this state, although he became a permanent resident of Arizona before the action was commenced, and personal service was effected in Arizona. (52 Cal.2d 822, 830-832. See also *Arko* v. *Starsevich* (1965) 237 Cal.App.2d 84, 85 [46 Cal.Rptr. 596]; *Miller* v. *Superior Court* (1961) 195 Cal.App.2d 779, 787 [16 Cal.Rptr. 36]; and *Soule* v. *Soule, supra,* 193 Cal.App.2d 443, 445-446.) The court noted, however: "Subdivision (b) of section 417 requires more than past domicile in the state. There must have been domicile here at the time the cause of action arose." (*Id.,* at p. 829.)

■ An order for the payment of child support, like an order for the payment of alimony, saddles the father with a financial obligation of a personal nature which, if valid, can be enforced in any state where the defendant may be located. "This being so, the defendant is entitled to insist that such a judgment be predicated upon personal service within the state which seeks to impose such obligation. To hold otherwise would be to violate the fundamental requirement of due process, and to give an unwarranted, extraterritorial effect to the judicial process of the issuing state." (*Perry* v. *Perry* (1953) 119 Cal.App.2d 461, 464 [259 P.2d 953]. See also *Hartford* v. *Superior Court* (1956) 47 Cal.2d 447, 454 [304 P.2d 1]; *Amparan* v. *Superior Court* (1966) 246 Cal.App.2d 41, 44 [54 Cal.Rptr. 501]; *Josephson* v. *Superior Court* (1963) 219 Cal.App.2d 354, 360-361 [33 Cal.Rptr. 196]; *Turner* v. *Superior Court* (1963) 218 Cal.App.2d 468, 472 [32 Cal.Rptr. 717]; and *Sharove* v. *Middleman, supra,* 146 Cal.App.2d 199, 202.)

If the original action had been filed in this state, and both father and mother had voluntarily appeared, the court (as presumably does the Nevada court) would have retained personal jurisdiction over the parties to modify the provisions for support upon such notice as would satisfy due process of law. (See *Dolgoff* v. *Dolgoff* (1947) 81 Cal.App.2d 146, 151 [183 P.2d 380]; and Civ. Code, § 4700 [former § 139].) The same juris-

diction would ensue from an action establishing a foreign decree in which personal jurisdiction over the defendant has been obtained. (See *Leverett* v. *Superior Court* (1963) 222 Cal.App.2d 126, 133-134 [34 Cal.Rptr. 784].) Here, however, there has never been personal jurisdiction over the father in this state.

█ If the action be considered as one for support, and the Nevada decree be disregarded, no cause of action arose until some three years after the father left this state. This is not a case where the father has deserted and created a cause of action for nonsupport at that time so that it can be said that the cause of action arose contemporaneously with the abandonment of the California residence. (See Comment (1960) 12 Stan.L.Rev. 848, 854.) █ The general obligation of support arises at the time of the child's birth and follows the father and the child as the former establishes the child's residence. The obligation follows the father after he is deprived of the child's custody when such order is accompanied by an enforceable provision for support. No authority is cited for the proposition that any state through which the peregrinations of military life (or modern business life) have led the family may subsequently subject a nonresident father, not found within that state, to personal jurisdiction for a future failure to support. The Uniform Reciprocal Enforcement of Support Act (see Code Civ. Proc., §§ 1650-1693; and *Elkind* v. *Byck* (1968) 68 Cal.2d 453, 459-460 [67 Cal.Rptr. 404, 439 P.2d 316]) is predicated upon the following premise, "With the increasing mobility of the American population the problem of interstate enforcement of duties of support became acute. A deserting husband was beyond the reach of process in the state where he had abandoned his family and the family had no means to follow him." (9C Uniform Laws Annotated, at p. 3.)

█ Moreover, if the cause of action for support be viewed as a continuing one, it was, insofar as it accrued prior to the Nevada decree, merged in the agreement and that decree. The effect of the Nevada decree on the measure of the obligation to support which was set forth in the agreement of the parties and incorporated in that decree is delineated in the decision of this court in *Solley* v. *Solley* (1964) 227 Cal.App.2d 522 [38 Cal.Rptr. 802]. There, as in this case, the parties while residing in this state entered into a child custody and property settlement agreement which provided for the support of their children by the father; thereafter, the mother at the father's suggestion established residence in Nevada for the purpose of securing a Nevada divorce; the father appeared in the action through his attorney; and the decree approved and incorporated the agreement of the parties, and included it as an exhibit. Some five and one-half years later the mother brought an action in this state on the agreement. Apparently the father was personally served in this state. The lower court gave judg-

ment for the mother for the difference between the amounts called for by the agreement and the amounts which the father had paid. This court upheld the father's contention that the agreement was merged in and extinguished by the decree.

This court said, "Since defendant [the father] appeared and participated in the Nevada action, the judgment and decree of that court being regular on its face must be accorded full faith and credit in this state. [Citations.] As between the parties the Nevada decree 'is res judicata not only of their status with relation to each other but also of all issues that were litigated or that could have been litigated therein. [Citations.]' (*Rediker* v. *Rediker* (1950) 35 Cal.2d 796, 801 . . .) Since Nevada obtained in personam jurisdiction over defendant husband, he became legally subject to a personal judgment against him for child support. [Citations.]" (227 Cal.App.2d at pp. 526-527.)

In response to the mother's contention that the Nevada court had no jurisdiction to provide for the support of the children because they were not physically present in Nevada, the court examined Nevada and California law (*id.*, pp. 528-530) and stated, "We therefore conclude that the Nevada court had jurisdiction in the case before us to provide for the custody and support of the minor children of the parties even though such children were never domiciled, resident or present in Nevada." (*Id.*, p. 530.)

The court then, in the absence of controlling Nevada precedent, applied California law in arriving at the following conclusion: "The Nevada court had jurisdiction to make an award of child support; it had the power to do so by infusing into its order the provisions of the agreement between the parties; and its ratification and approval of such agreement as set forth above resulted in a merger of the agreement into the decree, thereby extinguishing the agreement, dissolving any right of action thereon, and requiring plaintiff to invoke her remedies on the decree. The findings and conclusions to the contrary made by the court below cannot be sustained." (*Id.*, p. 531.)[2]

---

[2]The doctrine of merger, of course, does not preclude the court from looking behind the Nevada judgment for the purpose of ascertaining, insofar as is material in these proceedings, that the nature of the original cause of action, which the real party in interest seeks to modify, was for the support of petitioner's children. (See 29 Cal. Jur.2d, Judgments, § 255, p. 220.) The cases which disregard merger go no further. In *Imlay* v. *Carpentier* (1859) 14 Cal. 173, the court ruled that it was not necessary to bring an independent equitable action to set aside a judgment which had been obtained on a debt which had been listed in insolvency proceedings after commencement of suit but before judgment, and which was subsequently discharged. The court held that merger did not prevent showing that the judgment represented the discharged debt. It ruled, however, that the judgment debtor had an adequate remedy at law by

Since the Nevada decree was res judicata as to all issues that were or that could have been litigated therein, any preexisting cause of action for support that was not already merged in the agreement was similarly merged in the Nevada judgment. Any right to support arising from nonperformance of the Nevada judgment, or from circumstances giving rise to a right to modified and increased support can in no sense antedate the Nevada decree.

This is not to negate that "the California court, in view of the present residence of [the children] in this state, would have the legitimate power, under proper circumstances, to pass on [the children's] right, through the mother, to secure support from [the] father if there was *need* for it." (*Mattos* v. *Correia* (1969) 274 Cal.App.2d 413, 419 [79 Cal.Rptr. 229]. See also *Elkind* v. *Bynck, supra,* 68 Cal.2d 453, 457-458; *Dixon* v. *Dixon* (1932) 216 Cal. 440, 442 [14 P.2d 497]; *Warren* v. *Superior Court* (1955) 132 Cal.App.2d 392, 394 [282 P.2d 207]; *Starr* v. *Starr* (1953) 121 Cal.App.2d 633, 635-636 [263 P.2d 675]; and *Oravec* v. *Superior Court* (1953) 115 Cal.App.2d 581, 582 [252 P.2d 364].)

 The general principle is expressed in *Worthley* v. *Worthley* (1955) 44 Cal.2d 465 [283 P.2d 19], as follows: "Accordingly, we hold that foreign-created alimony and support obligations are enforceable in this state. In an action to enforce a modifiable support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered." (44 Cal.2d at p. 474. See also *Engle* v. *Superior Court* (1956) 140 Cal.App.2d 71, 75-82 [294 P.2d 1026].) In order to exercise jurisdiction over that subject matter, however, the court must secure personal jurisdiction over the defendant.

---

motion to set aside the judgment and a subsequent execution and levy. No question of jurisdiction was involved. Nor was any such question involved in *Smith* v. *Broderick* (1895) 107 Cal. 644 [40 P. 1033] in which the court ruled, "The foregoing provision of the constitution [limiting the power of a municipality to incur an indebtedness] cannot be evaded by a consent on the part of the officers of the municipality that a judgment may be entered against the municipality upon an open demand which constitutes no liability against the city." (107 Cal. at p. 650.) The other cases involve the issue as to whether the obligation in question was one which by law was excepted from the operation of a discharge in insolvency or bankruptcy. (See *Woehrle* v. *Canclini* (1910) 158 Cal. 107, 108 [109 P. 888]; *Carit* v. *Williams* (1887) 74 Cal. 183, 187 [15 P. 751]; *California Bank* v. *Clay* (1962) 207 Cal.App.2d 25, 27 [24 Cal.Rptr. 185]; and *Fitzgerald* v. *Herzer* (1947) 78 Cal.App.2d 127, 128-129 [177 P.2d 364].) The policy expressed in these cases is satisfied by recognizing that the obligations imposed by the Nevada decree are in the nature of child support which may be modified. It does not go so far as to give the courts of this state power to render a judgment in personam which they could not render even in the absence of the Nevada decree.

 Under the law of this state as it existed at the time the defendant was served, it was necessary that the cause of action arise while the petitioner was a resident of this state. The record shows he faithfully performed all of his obligations during his residence within this state and for three years thereafter. If the child, through the mother, has a new claim against the petitioner it does not fall within the former statute.[3]

Let a peremptory writ of mandate issue commanding the respondent court to quash the service of summons upon petitioner.

Molinari, P. J., and Elkington, J., concurred.

---

[3]No opinion is expressed as to whether under the new law (Code Civ. Proc., § 410.10), the facts that a child resided in this state at the time of the dissolution of the family and continues to so reside, and that an agreement was entered into within this state which provided for the support of the child, would furnish such minimum contacts with this state that the maintenance of suit for a future failure to support, either under the terms of the agreement or under changed circumstances, against a nonresident father who is personally served outside of the state would not offend traditional notions of fair play and substantial justice. (See *International Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 101, 66 S.Ct. 154, 161 A.L.R. 1057]; 1969 Judicial Council Report to the Governor and the Legislature, pp. 69-84; Am. Law. Inst., Rest.2d, Proposed Official Draft (1967) Conflict of Laws, §§ 27-39, particularly §§ 36, subd. (2), 37 and 39; Gorfinkel & Lavine, *California Long-Arm Jurisdiction* (1970) 21 Hastings L.J., 1163, cf. pp. 1173-1178 with pp. 1214-1216; Ehrenziveig & Mills, *Personal Service Outside the State* (1953) 41 Cal.L.Rev. 383, 392.)