[S.F. No. 23574. May 26, 1977.]

EZRA KULKO, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND
COUNTY OF SAN FRANCISCO, Respondent;
SHARON KULKO HORN, Real Party in Interest.

**COUNSEL**

Stern, Stotter & O'Brien and Lawrence H. Stotter for Petitioner.

No appearance for Respondent.

Shapiro & Thorn and Suzie S. Thorn for Real Party in Interest.

Stephen Adams as Amicus Curiae on behalf of Real Party in Interest.

**OPINION**

**SULLIVAN, J.***—In this proceeding brought pursuant to section 418.10, subdivision (c), of the Code of Civil Procedure, petitioner Ezra Kulko seeks a writ of mandate directing respondent superior court to vacate its order denying petitioner's motion to quash service of summons for lack

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

of jurisdiction in the underlying action, to establish a foreign judgment of divorce, and to grant said motion. We have concluded that the trial court correctly denied the motion. We deny the petition.

■■ ■■■ Viewing the evidence under the well-settled rules governing review of an order based on affidavits,[1] we set forth the pertinent facts.

On September 25, 1972, after 13 years of married life, real party in interest Sharon Kulko (hereafter plaintiff) was granted a decree of divorce from petitioner Ezra Kulko (hereafter defendant) by the Civil Court of Port-au-Prince in the Republic of Haiti. There were two children born of the marriage: Darwin, born June 23, 1961, and Ilsa, born July 10, 1962. Under a written separation agreement, entered into by the parties in New York, their marital domicile, and thereafter attached to and made a part of the decree, it was agreed that during the period of the year when they were attending school Darwin and Ilsa should reside with and remain in the care, custody and control of defendant and that during the summer months and Christmas and Easter vacation weeks, they should reside with and remain in the care, custody and control of plaintiff. The agreement recited that defendant resided in New York and plaintiff in San Francisco. Defendant agreed to pay $3,000 annually for the support of the children during the time they resided with their mother in California.

During 1973, in accordance with the agreement, both children were sent to San Francisco and returned to New York. However, in December 1973, on the eve of her departure to spend the Christmas vacation with

---

[1] " 'An appellate court will not disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere with express findings upon which a final judgment is predicated. When the evidence is conflicting, it will be presumed that the court found every fact necessary to support its order that the evidence would justify. So far as it has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive. This rule is equally applicable whether the evidence is oral or documentary. In the consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review.' [Citations.] When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." (*Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 507-508 [289 P.2d 476, 47 A.L.R.2d 1349]; see also *Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636]; *Doak* v. *Bruson* (1907) 152 Cal. 17, 19 [91 P. 1001]; *Detsch & Co.* v. *Calbar, Inc.* (1964) 228 Cal.App.2d 556, 563 [39 Cal.Rptr. 626]; *DeWit* v. *Glazier* (1957) 149 Cal.App.2d 75, 81-82 [307 P.2d 1031].)

her mother, Ilsa informed her father that she wanted to live in California with her mother. Defendant thereupon purchased a one-way airplane ticket for her and she left with all her clothes. Throughout 1974 and 1975 Ilsa resided with her mother in California during the school year and with her father in New York during the summer. At the end of each summer, defendant provided her with an airplane ticket and she returned to live with her mother in San Francisco during the school year.

Meanwhile, throughout this period Darwin had continued to live with his father during the school year and his mother during the summer and on vacation. On January 10, 1976, Darwin telephoned plaintiff from New York, informing her that he was in trouble, that his father did not want him and that he wished to come to San Francisco to live with her. She sent him an airplane ticket and he immediately joined her in San Francisco.

Three weeks later, on February 5, 1976, plaintiff commenced the underlying action to establish the Haitian divorce as a judgment of this state, to award custody of the children to plaintiff and to receive increased child support from defendant. On the same day, the trial court granted plaintiff temporary custody of Darwin and Ilsa and restrained both parties from removing the children from plaintiff's home. Defendant, who had been served with summons by mail in New York, made a special appearance in California and moved for an order to quash service of summons (Code Civ. Proc., § 418.10, subd. (a)(1)) for lack of personal jurisdiction in that he was not a resident of California and did not have the requisite minimum contacts with California to satisfy due process requirements. Defendant supported his motion with two personal affidavits and plaintiff responded with an affidavit in opposition. The trial court denied the motion. This proceeding for a writ of mandate followed. (Code Civ. Proc., § 418.10, subd. (c).)

No contention is made before us that the trial court lacked jurisdiction to determine the *custody* of Darwin and Ilsa. (See Civ. Code, § 5152; *Titus* v. *Superior Court* (1972) 23 Cal.App.3d 792, 797-798 [100 Cal.Rptr. 477]; see *Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 777-779 [197 P.2d 739]; Rest.2d Conflict of Laws, § 79, pp. 237-240.) ■ However, in order to impose upon defendant a personal liability to support the children, the court must secure personal jurisdiction over him. (*Titus* v. *Superior Court, supra,* 23 Cal.App.3d 792, 799; *Schoch* v. *Superior Court* (1970) 11 Cal.App.3d 1200, 1207 [90 Cal.Rptr. 365].) ■ In order to secure personal jurisdiction over a nonresident defendant by service of

summons by mail outside California, the trial court must have power to exercise such jurisdiction under section 410.10 of the Code of Civil Procedure which provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." This section includes all the recognized bases of judicial jurisdiction (*Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 302 [118 Cal.Rptr. 548]; Judicial Council comment to Code Civ. Proc., § 410.10, 14 West's Ann. Code Civ. Proc. (1973 ed.) p. 459) and manifests an intent that the courts of California utilize all such bases, limited only by constitutional considerations. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].)

As we explained in *Sibley,* "One of the recognized bases for jurisdiction in California arises when the defendant has caused an 'effect' in the state by an act or omission which occurs elsewhere." (16 Cal.3d at p. 445; see also *Judd* v. *Superior Court* (1976) 60 Cal.App.3d 38, 43 [131 Cal.Rptr. 246]; *Quattrone* v. *Superior Court, supra,* 44 Cal.App.3d 296, 304-306; *Titus* v. *Superior Court, supra,* 23 Cal.App.3d 792, 801-802.) It is at once apparent that the potential scope of this basis of jurisdiction is almost unlimited since any act or omission of a defendant anywhere in the world causing an "effect" in California could theoretically subject him to in personam jurisdiction in California. If this theory of jurisdiction were carried out to its full extremes, it is obvious that it would discourage those outside California from having any contacts or relations with persons living in our state. It has therefore been recognized that the mere causing of an effect in California is not necessarily sufficient to supply a constitutional basis for jurisdiction. "A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an omission or act done elsewhere with respect to causes of action arising from these effects, unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable." (Judicial Council comment to Code Civ. Proc., § 410.10, 14 West's Ann. Code Civ. Proc. (1973 ed.) p. 472.) In *Sibley,* after alluding to the principles set forth by the United States Supreme Court in *International Shoe* v. *Washington* (1945) 326 U.S. 310, 316-317 [90 L.Ed. 95, 101-103, 66 S.Ct. 154, 161 A.L.R. 1057], and in *Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297, 78 S.Ct. 1228], we attempted to distill the criteria for determining whether or not the exercise of jurisdiction over a nonresident on this basis was reasonable. We emphasized the importance of a showing on the record that the nonresident "purposefully availed himself of the privilege of conducting business in California or of the benefits and protections of

California laws . . . [or] anticipated that he would derive any economic benefit as a result of his" act outside of California. (16 Cal.3d at p. 447.) We conclude therefore that once it has been established that a nonresident defendant has caused an effect in this state by an act or omission elsewhere, the reasonableness of exercising personal jurisdiction over him on this basis may be determined according to the above criteria.

In the case at bench, we are called upon to apply the foregoing principles to an important area of family law, namely acts or omissions by nonresident parents outside of California which affect their children, and their relationship with their children, who are physically present in California. Initially we observe that probably no parental act more fully invokes the benefits and protections of California law than that by which a parent permits his minor child to live in California. The parent thereby avails himself of the total panoply of the state's laws, institutions and resources—its police and fire protection, its school system, its hospital services, its recreational facilities, its libraries and museums, to mention only a few.   ■   Therefore, we start with the premise that a nonresident parent who allows his minor child or children to reside in California has by that act purposely availed himself of the benefits and protections of the laws of California to such an ' extent that absent unusual circumstances or countervailing public policies such act would support personal jurisdiction over the nonresident parent for actions concerning the support of these children.

Two recent opinions by the Courts of Appeal have identified strong public policies affecting the reasonableness of asserting personal jurisdiction over nonresident parents of children physically present in the state. In *Titus* v. *Superior Court, supra,* 23 Cal.App.3d 792, 803, the court said: "It is a strong policy of the law to encourage the visitation of children with their parents. Such a policy should be fostered rather than thwarted." In *Judd* v. *Superior Court, supra,* 60 Cal.App.3d 38, 45, a different appellate district declared: "It should be a matter of strong public policy to encourage the payment of support and communication between a natural father and his children, not to discourage the same by subjecting the father to the expense and inconvenience of relitigating this matter of support in our state." In each case the Court of Appeal, upon application of these strong public policies to the particular facts before it, concluded that it would be unreasonable to impose personal jurisdiction.

In *Titus,* the father, who had custody of the children under a Massachusetts divorce decree, sent the children to California to visit their mother for the summer, pursuant to a subsequent written custody agreement. The agreement specified that the children were to be returned to the father in Massachusetts by the end of August. The mother, in breach of the agreement, retained the children and brought an action in California to establish the foreign divorce decree as a judgment, to obtain custody of the children and to secure support payments from the father. While the father may have in a sense purposely availed himself of the benefits and protections of the laws of California by sending his children here, his purpose was merely to have them visit their mother for a limited time and in compliance with the written agreements between the parents, which also provided for child support payments by him to the mother during the visit. It was clear that the purpose of the father's act was supported by a strong policy of the law which would be thwarted if the parent thereby became subject to personal jurisdiction. "If a parent, who has custody of his children, is faced with the prospect of submitting himself to the jurisdiction of another state by the mere act of sending his children to that state for the purpose of visiting with the other parent, it is reasonable to assume that he would refrain from doing so rather than running such risk, particularly in view of the inconvenience and costs attendant to litigating in another state." (23 Cal.App.3d at p. 803.)

In *Judd,* the parties had lived in New York and Connecticut until their separation. They entered into a written separation agreement and the wife then obtained a Mexican divorce decree which incorporated the terms of the separation agreement. She then moved to California with the minor children of whom she had custody. The father never resided in California but visited the children there and, pursuant to their agreement, sent the mother spousal and child support payments. Ten years after her Mexican divorce, the mother filed a petition for dissolution of marriage in California, seeking among other things custody of the children and spousal and child support. The Court of Appeal issued a writ of mandate directing the quashing of the service of summons on the father insofar as the summons purported to exercise personal jurisdiction over the father for spousal and child support. In *Judd* the father had not purposely availed himself of the protections and benefits of the laws of California since he had never had custody of the children and had not sent them to California. The Court of Appeal concluded that it would be neither fair nor reasonable to hold that this state acquired jurisdiction over the father merely because he sent support payments to California,

communicated with his children by mail or telephone, and visited them here, since to do so would thwart the public policy of encouraging a parent's support of, and communication with his children.

In the case at bench, defendant sent Ilsa to California in December 1973 to visit her mother for the Christmas vacation in accordance with terms of the separation agreement incorporated in the divorce decree. Under *Titus* it is clear that this act in itself would not confer jurisdiction over defendant. At that time, however, defendant knew that Ilsa wanted to stay permanently with her mother in California and in apparent recognition of this desire he purchased for Ilsa only a one-way ticket and allowed her to take all her clothing. These facts would suggest that defendant at least contemplated surrendering custody of Ilsa to the mother in California and sent her to California with an apparent intention of allowing her to remain and thereafter reside permanently there. This intention was finalized in 1974 when Ilsa returned to New York to spend the summer with defendant. At the end of the summer, he bought her a ticket to return to California to live with her mother for the school year. The same procedure was repeated in the summer of 1975. Thus it is clear that defendant actively and fully consented to Ilsa living in California for the school year and that he twice sent her to California for that purpose. Here, unlike *Titus*, defendant did not send Ilsa to California for a mere temporary visit, but for permanent residence with plaintiff subject only to summer visits in New York. By doing so, defendant purposely availed himself of the full protection and benefit of California laws for the care and protection of Ilsa on a permanent basis. In view of the factor of Ilsa's permanent residence here, we apprehend no thwarting of the public policy supported by the *Titus* court.

We deem it fair and reasonable to extend the jurisdiction of the courts of this state over defendant on the basis of his acts of sending Ilsa into this state to reside permanently with her mother. Not only has defendant by these acts availed himself of the full benefit and protection of the laws of this state, but he has also derived immediate economic benefit from them. Under the terms of the decree, he had custody of Ilsa and was liable for her support while she lived with him. He paid support to the mother under the decree only for the summer, Christmas and Easter vacations. Therefore, by allowing the child to live with the mother

throughout the school year, he was no longer liable for the child's support for that period—a clear economic benefit.

We observe, however, that while defendant's acts with respect to Ilsa form a basis to confer personal jurisdiction over him, he has not by any act or omission outside California with respect to his other child, Darwin, caused an effect in this state which independently of the foregoing considerations would confer such jurisdiction. It will be recalled that Darwin came to California to live permanently with his mother at his own request, by an airplane ticket paid for and sent to him by his mother, and without defendant's knowledge. It would appear that subsequently defendant consented to this fait accompli in that he has not undertaken any action to retrieve the child and has even indicated his assent to this state of affairs by letter. Nevertheless, although he has consented to Darwin's permanent residence in California, and he will thereby derive economic benefit by no longer being liable for Darwin's support throughout the school year, the fact remains that he at no time undertook any affirmative act to purposely avail himself of the benefit and protection of the laws and institutions of this state. He did not send Darwin to California, nor indeed know of the latter's departure from New York beforehand. Therefore, under the principles set forth above, defendant would not have been subject to jurisdiction in personam in California for Darwin's support, if Darwin were the sole child of the parties.

Nonetheless, we conclude that this fact does not deprive the court of personal jurisdiction over defendant for the support of *both* children since the support of both is presented as a single issue in the underlying action. The separation agreement, which was incorporated into the Haitian decree sought to be established as a judgment of this state, provided for the payment of $3,000 annually for the support of *both* children. The complaint seeks support for both children. Defendant's motion to quash and supporting affidavits assert lack of jurisdiction over both children. We deem it fair and reasonable for defendant to be subject to personal jurisdiction for the support of both children, where he has committed acts with respect to one child which confers personal jurisdiction and has consented to the permanent residence of the other child in California.[2]

[2]To the extent that *Starr* v. *Starr* (1953) 121 Cal.App.2d 633 [263 P.2d 675], is inconsistent with the views expressed in this opinion, it is disapproved.

The alternative writ of mandate is discharged and the petition for a peremptory writ is denied.

Tobriner, Acting C. J., Mosk, J., and Wright, J.,* concurred.

**RICHARDSON, J.**—I respectfully dissent. In my view, it is unreasonable to subject petitioner to the jurisdiction of the California courts under the circumstances in this case. Petitioner's contacts with this state are far too minimal to justify in personam jurisdiction on any of the accepted and recognized bases.

It is uncontradicted that petitioner has never resided in California and has had only two brief, isolated contacts with the state during his entire life. He is a resident of New York, the site of the marital domicile, and he has no business interests in California. As the majority indicates, after the parties separated respondent wife obtained a divorce in Haiti and moved to California where, pursuant to agreement with petitioner, she visited with the children during the summer and holidays. Petitioner maintained custody of the children in New York during the school year.

According to respondent's affidavit in opposition to petitioner's motion to quash, in December 1973 "Ilsa told her father before she left for Christmas vacation that she wanted to live with her mother now." Petitioner allegedly acceded to Ilsa's announcement, bought her a one-way air ticket to California, and since that time has seen Ilsa in New York only during the summers. As for son Darwin, respondent, in her affidavit, alleged that in January 1976 Darwin called her and told her he wanted to come to San Francisco to live, that she sent him a plane ticket, and that he (and Ilsa) presently live with respondent in California. (We may assume the truth of the foregoing allegations, although it is noteworthy that petitioner's own affidavit alleged that respondent induced both Ilsa and Darwin to leave New York without petitioner's knowledge or consent.)

---

*Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

I have no quarrel with the majority's statement of general legal principles, derived primarily from our recent decision in *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442 [128 Cal.Rptr. 34, 546 P.2d 322], and cases cited therein. As *Sibley* explains, however, "The mere causing of an 'effect' in California, . . . is not necessarily sufficient to afford a constitutional basis for jurisdiction; notwithstanding this 'effect,' the imposition of jurisdiction may be 'unreasonable.' " (P. 446.) In determining whether or not to impose jurisdiction, *Sibley* explains that it is necessary for the court to ascertain whether the defendant " '*purposefully* avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " (P. 447, italics added.) In *Sibley,* we were quoting from the leading Supreme Court opinion in *Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297, 78 S.Ct. 1228], which expressed as follows the controlling principle relevant to our determination: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Noting that the nonresident's conduct must be "purposeful," I disagree with the majority's application of the foregoing principles to the particular facts of this case. As to Ilsa, the majority describes petitioner's conduct as "actively and fully consent[ing] to Ilsa living in California" subject only to summer visits in New York, and holds that such conduct constitutes sufficient ground upon which to confer personal jurisdiction over petitioner. In the majority's eyes, petitioner "purposely availed himself of the full protection and benefit of California laws for the care and protection of Ilsa on a permanent basis." (*Ante,* p. 524.) If, however, we are to give any reasonable meaning to the phrase "*purposely* availed," the record before us discloses no evidentiary support whatever, even if we disregard petitioner's recitation of events and accept respondent's version. Petitioner may have purchased Ilsa's air passage to California, but my reading of the record indicates no *purposeful* conduct by him which reasonably can be said to invoke the benefits and protections of California laws, thereby conferring in personam jurisdiction over him. At best, petitioner passively acquiesced in his teenaged daughter's unilateral decision to live in California.

The majority reasons, without citation of supporting authorities, that whenever a parent "permits" his minor child to reside in California, the parent thereby "avails himself of the total panoply of the state's laws, institutions and resources . . . ." (*Ante,* p. 522.) Yet, can such an act of acquiescence fairly and realistically be viewed as "purposeful" conduct? According to respondent, Ilsa "told" petitioner that she was going to live with respondent in California. Petitioner's unresisting assent to Ilsa's decision discloses no intent on his part, purposeful or otherwise, to enjoy the "panoply" of California's resources.

If, however, petitioner's actions with respect to Ilsa can be rationalized as "purposeful conduct," there is no basis on which to support in personam jurisdiction over petitioner as to Darwin. The record reveals that, as to his son, petitioner has done absolutely nothing which can be said to have caused an effect in California. Darwin came to live in California at his own request and without petitioner's knowledge. Petitioner neither knew of, nor lifted a finger to assist, Darwin's flight to California. His airplane ticket was paid for by respondent. All that can be said is that when petitioner learned of the development he passively accepted a situation not of his own making. He took no action, direct or indirect, to invoke the protections of California's laws. Under such circumstances, no basis exists in this record upon which to impose in personam jurisdiction over petitioner as to Darwin.

The majority's imposition of in personam jurisdiction over absent parents under circumstances such as here presented may well conflict with the "strong" public policy which California courts have asserted favoring the visitation of children with their parents, and encouraging cooperation between parents. (See *Judd* v. *Superior Court* (1976) 60 Cal.App.3d 38, 45 [131 Cal.Rptr. 246]; *Titus* v. *Superior Court* (1972) 23 Cal.App.3d 792, 803 [100 Cal.Rptr. 477].) The rule announced by the majority may encourage a divorced parent such as petitioner to forbid or physically prevent his or her children from visiting a California parent, lest in personam jurisdiction be thereby conferred over the nonresident parent. Such parents may well become extremely guarded and cautious when they suspect that a child's change of residence is contemplated or effected, either unilaterally or with the connivance of the California parent. Prudent nonresident parents may simply refuse all cooperation and visitation whatever, thus contravening well established public policies.

Finally, were we to hold that petitioner's contacts in California were insufficient to justify imposition of in personam jurisdiction over him, respondent would not be rendered wholly remediless. No reason appears of record why respondent could not retain New York counsel to pursue the action against petitioner in the state where he resides.

I would issue the writ.

Clark, J., concurred.