Filed 10/29/13  Margaronis v. Tobin CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANASTASSIOS MARGARONIS,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>FRANK HENRY TOBIN,<br><br>　　　Defendant and Appellant. | A134603<br><br>(Sonoma County<br>Super. Ct. No. SCV250578) |

　　　The Superior Court of Sonoma County entered an anti-harassment order pursuant to Code of Civil Procedure section 527.6 (section 527.6) against Frank Henry Tobin, forbidding him from specified activities against his neighbor Anastassios Margaronis. The order included a statutory award of attorney fees.  Tobin appeals from the order, contending that it, and the fee award, lack the support of substantial evidence.  Tobin further contends that the order is defective because there is no evidence of a probable future continuation of the objectionable activities.  We conclude that Tobin's contentions are without merit, and affirm the order.  We also conclude that Margaronis is entitled by section 526.7 to an additional award of attorney fees to compensate for expenses incurred on this appeal.

## BACKGROUND

　　　On October 26, 2011, Margaronis filed a "Request for Orders to Stop Harassment" on behalf of himself, his wife Maya, and his 15-year-old daughter Benita.  The request was accompanied by a declaration by Margaronis detailing numerous incidents between himself and Tobin, starting in February 2010.  Integral to the claimed pattern of

1

harassment was the role of Tobin's grandson, Frank Albert Tobin, who was referred to throughout the proceedings as "Frank Junior" or "Junior," and who is not a party to this appeal. The claimed harassment started with spiked tires and moved to firing a pellet gun and actual attacks on Margaronis. Also included were incidents of jeering, taunting, stalking, and numerous instances of verbal abuse and threats.

The trial court immediately issued a temporary restraining order, which was renewed before the matter was tried in November-December 2011.

The injunction at issue was entered after the trial court had conducted an extended evidentiary hearing that took seven days, and also covered the separate action by Margaronis against Junior for injunctive relief. At its conclusion the trial court (Honorable Patrick Broderick) explained its decision in extraordinary length and detail, an explanation that takes 28 pages in the reporter's transcript. The court explained why it concluded that neither Tobin nor Junior were persuasive or particularly credible in their version of events. On the other hand, the court found Margaronis's wife and daughter to be "believable, credible and consistent" in their testimony . Nevertheless, the trial court did not uniformly uphold Margaronis on every point. Most significantly, the court refused to find that clear and convincing proof supported the claimed pellet gun attack. The court concluded the hearing by ruling that Tobin and his grandson would be "jointly and severally liable for the attorney's fees and costs that were incurred by . . . Margaronis."

## REVIEW

### The Applicable Law

Section 527.6 provides in pertinent part:

"(a)(1) A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an injunction prohibiting harassment as provided in this section.

"(b) For the purposes of this section:

"(1) 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose . . . .

2

"(2) 'Credible threat of violence' is a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose.

"(3) 'Harassment' is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner. [¶] . . . [¶]

"(7) 'Unlawful violence' is any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but shall not include lawful acts of self-defense or defense of others."

Subdivision (r) specifies that "The prevailing party in any action brought under this section may be awarded court costs and attorney's fees, if any."

### Tobin's Contentions

Tobin frames the issues for review as follows: (1) "There was no Substantial Evidence of Unlawful Violence to Support Issuance of the Injunction Since a Single Incident Cannot Support an Order"; (2) "There was no Substantial Evidence of Stalking to Support Issuance of the Injunction"; (3) "There was no Substantial Evidence of a Credible Threat of Violence to Support Issuance of the Injunction"; (4) "There Was No Substantial Evidence of a Course of Conduct Designed to Seriously Alarm, Annoy or Harass"; (5) "There was no Substantial Evidence of Conduct that Would Cause a Reasonable Person Substantial Emotional Distress and No Evidence of Such Distress Suffered by [Margaronis]"; (6) "There was no Substantial Evidence to Support the Court's Findings Against Frank Sr."; (7) "Since There Was No Finding of a Probable Threat of Future Violence, The Court Order Was Overbroad"; and (8) "Since There Was No Substantial Evidence to Support the Injunction, the Attorney Fees Award Against Frank Sr. Should be Vacated."

In addition to disputing all of these contentions, Margaronis asks that he receive an additional award of "[attorney] fees and costs incurred in responding to this appeal."

3

## The Standard of Review

This court has noted that "Defendants raising a claim of insufficiency of the evidence assume a 'daunting burden.' " (*Whiteley v. Philip Morris, Inc*. (2004) 117 Cal.App.4th 635, 678.)

" '[W]here the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is any substantial evidence to support them; . . . we have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' " (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.)

"[I]t must be borne in mind that, in examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding. In our further statement of facts, we shall not, therefore, undertake to recite the testimony, abundant as it may be, which would have supported a finding in favor of [appellant] . . . . All that is required is to point out testimony which, if given credence by the trial court, could logically lead to the conclusion [adopted by the trier of fact] . . . . That much of this testimony was contradicted is, in this inquiry, an entirely unimportant consideration." (*Bancroft-Whitney Co. v. McHugh* (1913) 166 Cal. 140, 142.)

These principles are equally applicable to findings that may be implied on appeal to support a trial court's judgment or order (*Michael U. v. Jamie B*. (1985) 39 Cal.3d 787, 793; *Kulko v. Superior Court* (1977) 19 Cal.3d 514, 519, fn. 1; *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1148), and they apply to appeals from injunctions issued under section 527.6. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188; *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) Which means that we are not limited solely to what Judge

Broderick stated in his oral rulings, except insofar as he made specific findings *against* Margaronis.

### There Was Substantial Evidence To Support
### The Trial Court's Findings

It would serve no purpose to recount in elaborate detail the evidence in the more than 1000 pages of testimony in the reporter's transcript together with the 120 pages of exhibits in the clerk's transcript. The differences in perspective and conclusion in the competing versions of events were profound. However, the parties' briefs demonstrate that they are aware of what is in the record. Accordingly, and in accordance with the governing rules just discussed, we mention only what is necessary to resolve Tobin's evidentiary challenges.

The Tobin and Margaronis families lived across the street from each other for many years in friendship and harmony. It was only after Frank Junior began living with the Tobins in 2009 that matters began to deteriorate.

In February 2010, Junior made two attempts to puncture the tires of Margaronis' car. One of the attempts succeeded. Tobin acknowledged his grandson's responsibility, and paid to have the tire repaired, but Junior screamed at Ms. Margaronis, "I am going to kick your ass, you fucking bitch." When Margaronis pressed charges (which apparently led to Junior's departure for the rest of 2010 as a result of a juvenile court delinquency proceeding), Tobin became enraged, called Margaronis a liar, and a "lying sack of shit," this while moving menacingly toward Margaronis. Tobin also confessed to Maya Margaronis that he had difficulty in controlling Junior.

In June 2011, after Margaronis complained to police about the pellet gun incident, Tobin ran up to Margaronis, yelled, "You're not going to put your hands on my grandson anymore," and twice struck Margaronis's face with his clenched fist. As Junior approached from behind Margaronis while brandishing a belt, Tobin told Margaronis, "Now let's finish this." Margaronis escaped without further injury but began fearing for his safety.

5

The following month, the parties—and Junior—agreed to entry of a mutual restraining order. In September of 2011, and in violation of the order, Junior yelled at Margaronis, "Fuck you. I am going to shoot you, you son of a bitch."

The next month, October, Junior threw a rock that struck Margaronis's truck as he was taking his daughter to school. As Margaronis started to use his cell phone, Junior rushed up, reached into the truck, and began stabbing Margaronis with a knife. When Margaronis returned to his home after receiving medical treatment for his minor injuries, Tobin came up and said, "Did somebody hurt you, poor baby?" and again "let's finish this now." As a result of all this, Margaronis feels "I am taking a risk [from the Tobins] every time I walk my dog down Derby Lane." At least once while walking his dog, Margaronis was shadowed by Tobin and Junior. Margaronis fears for his family's safety. His wife is also afraid.

Ms. Margaronis testified that they and the Tobins live in a cul-de-sac, and that the Margaronises must drive past the Tobin home to leave. As she did so, Junior would "give me the finger," yell out "fuck you," or "asshole," or "screw you," and "grab his crotch and shake it around." He also made animal noises—"baaing of a sheep, . . . mooing like a cow." This continued until shortly after the first restraining order was issued, once Margaronis commenced this action.

Ms. Margaronis further testified: "Coming out of my home is generally an unpleasant experience because . . . I do not know when or how one of the Tobin males will do things that are unpleasant or disturbing or intimidating. [¶] [I w]orry for my husband particularly because I feel the bulk of the animosity is directed toward him, and I do worry also for my daughter who is no longer able to move very freely in the neighborhood on her own." To avoid the Tobins, Ms. Margaronis has changed where she walks her dog.

The unstated predicate behind most of Tobin's contentions is that Junior's acts and conduct are not attributable to him and cannot be considered in evaluating the validity of the injunction against him. As a general proposition, we can agree that vicarious or derivative liability could pose very legitimate concerns. However, any such fears here

are not well placed. It is perfectly clear from the record that the Tobins are a family in the truest sense. They live together. They are a single unit. It is equally clear that Tobin has an understandable instinct to shield his grandson from danger. But that instinct loses its luster when it becomes reflexive protection of Junior's boorish behavior—not to mention his criminal conduct. And there can be doubt that Tobin has assumed the role of uncritical defender of his grandson, even as he admitted losing the ability to control Junior. In these circumstances there is no impropriety in continuing to treat both Tobins as a single unit, to the extent that the grandfather is being held responsible for what the grandson has done.

With this point established, Tobin's claims are rapidly resolved. There is not just Tobin's attack on Margaronis, but Junior's also, not to mention the entire history of accompanying hostile remarks and gestures. Tobin's first contention thus falls because we are not dealing with "a single incident." And we are dealing with what could be, and was, found to constitute a "course of conduct," that is, "a series of acts over a period of time, however short, evidencing a continuity of purpose." (§ 527.6, subd. (b)(1).) Even restricted to the period after Junior resumed living with his grandparents, the concerted actions of the Tobins easily satisfies this standard. Tobin's fourth and fifth contentions are therefore rejected.

As for Tobin's second argument, that the evidence of stalking is insufficient, section 526.7 incorporates the definition of Penal Code section 646.9. But the Penal Code does not confine the definition of stalking to the willful, malicious, and repeated following or a person, but extends the scope of stalking to include "Any person who willfully, maliciously, and repeatedly follows *or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety person.*" (Pen. Code, § 646.9, subd. (a), italics added.) Because harassment is made out here in abundance, Tobin's second argument fails. As for "credible threat," the testimony of Mr. and Ms. Margaronis is alone sufficient as substantial evidence and thus able to defeat Tobin's third argument. (Evid.

Code, § 411.)  Their testimony is likewise sufficient for proof of emotional distress, contrary to Tobin's sixth argument.

The actual attacks, Tobin's repeated threats to "finish this now," and the continuing conduct of the Tobins, even in the face of judicial orders to desist, are a reasonable basis for Judge Broderick to conclude there was a probability of future violence.  Tobin's claim to the  contrary in his eighth argument is without merit.

In light of the foregoing, Tobin's seventh contention—"There was no Substantial Evidence of to Support the Court's Findings Against Frank Sr."—and his ninth contention—"Since There was no Substantial Evidence to Support the Injunction, the Attorney Fees award Against Frank Sr. Should be Vacated."—are untenable.

Finally, there is Margaronis's request for an additional award of attorney fees. Although subdivision (r) of section 526.7 does not expressly state its application to appellate proceedings, it has been so construed.  (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 812-813.)  We exercise that discretionary authority by agreeing with Margaronis that he should be compensated for defending against this appeal.  Given its far greater familiarity with the case, issues, and quality of counsel representing Margaronis, the trial court is better situated to fix the precise amount of those fees.  As for costs, those come to Margaronis as the prevailing party on this appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

## DISPOSITION

The order is affirmed.  Margaronis is awarded his costs on appeal, and an award of attorney fees in the amount determined by the trial court.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Haerle, J.

9